NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0171n.06

No. 11-1960

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Feb 14, 2013***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CLARENCE HENRY COHEN, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

Before:  MOORE, SUTTON, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Clarence Cohen ("Cohen") pleaded guilty pursuant to a plea agreement to one count of conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841, 846.  The district court held an evidentiary hearing to determine the quantity of drugs attributable to Cohen for sentencing purposes and found Cohen responsible for at least four kilograms of crack cocaine and at least two kilograms of powder cocaine.  Notwithstanding an appeal-waiver provision in his plea agreement, Cohen seeks review of the twenty-two-year sentence imposed by the district court.  He argues that the appeal-waiver provision should not be enforced, that the district court erred by failing to grant his motion for a continuance from the evidentiary hearing, and that his sentence was procedurally unreasonable.  Regardless of whether the appeal-waiver in Cohen's plea agreement is enforceable

under the circumstances presented by this case, Cohen's challenges to his sentence lack merit.

Accordingly, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Cohen pleaded guilty, pursuant to a written Rule 11 plea agreement, to one count of conspiracy to possess with intent to distribute and to distribute in excess of one kilogram of cocaine, in violation of 21 U.S.C. §§ 841, 846. *See* R. 356 (Plea Agmt. at 2) (Page ID #811). Cohen was charged, along with fifteen other co-defendants, for his participation in a drug-distribution conspiracy spanning from January 2008 to August 2009. R. 94 (First Super. Indict. at 1–2) (Page ID #79–80).

On October 21, 2010, the district court held a hearing in which the district judge accepted Cohen's guilty plea. During the hearing, the district judge asked Cohen whether he had discussed "this matter," i.e., the charges against him, with his attorney, to which Cohen responded affirmatively. R. 434 (Plea Hr'g Tr. at 7) (Page ID #1423). Cohen also confirmed that he signed the plea agreement being submitted, *see id.* at 15 (Page ID #1431), but he was not asked whether he read or discussed the agreement with his attorney. The transcript reflects the following discussion:

> THE COURT: All right. Mr. Cohen, how do you plead to the charge of conspiracy to possess with intent to distribute and to distribute cocaine?
> THE DEFENDANT: Plead guilty.
> . . .
> THE COURT: Your attorney and the attorney for the government have submitted to me a Rule 11 Plea Agreement which I've entered into the record as Exhibit 4. Did you sign that agreement?
> THE DEFENDANT: Yes, I did.
> THE COURT: And is that agreement the basis on which you're pleading guilty here today?

THE DEFENDANT: Yes.

*Id.* at 14–15 (Page ID #1430–31). The district court then asked the prosecutor to recite the terms of the plea agreement. The prosecutor stated, in part, "Paragraph 7 of the Rule 11 Plea Agreement indicates—includes a waiver of appeal which indicates that the defendant waives any right he may have to appeal his conviction in this matter." *Id.* at 16 (Page ID #1432). The district court asked Cohen, "[D]o you understand and agree with the terms of the plea agreement stated by [the prosecutor]?," to which Cohen responded, "Yes." *Id.* at 17 (Page ID #1433). The district judge then accepted Cohen's guilty plea, and counsel did not raise an objection regarding the district court's compliance with Federal Rule of Criminal Procedure 11. *Id.* at 20–21 (Page ID #1436–37).

Cohen's plea agreement contained an appeal-waiver provision that was broader than the term recited by the prosecutor. The waiver provision not only contained a waiver of the right to appeal Cohen's conviction, but also included a waiver of the right to appeal his sentence, except in certain specified circumstances. R. 356 (Plea Agmt. at 7) (Page ID #816). The plea agreement further called for the district court to determine the appropriate sentence and Sentencing Guideline range after making determinations regarding relevant conduct and Cohen's leadership role in the alleged conspiracy. *Id.* at 2–3 (Page ID #811–12).

The district court subsequently held an evidentiary hearing on January 19, 2011, to determine the quantity of drugs attributable to Cohen. On the day of the hearing, the Government provided defense counsel with a brief summarizing the evidence that it would present during the hearing. R. 435 (Evid. Hr'g Tr. at 3–4) (Page ID #1442–43). The brief indicated that two of Cohen's co-

defendants, Salina Carter ("Carter") and Shawntea Brown ("Brown"), would testify, and it included

summaries of their proffer interviews. The submission also included a proffer statement from Gary

Bryant, an individual who purportedly aided Cohen in cooking crack cocaine. The Government

planned to call ATF Special Agent Terry Schimke ("Schimke") to testify regarding Bryant's

statements about Cohen's possession and distribution of cocaine. Further, the Government's

submission contained summaries of several inculpatory telephone calls which had been intercepted

previously during the investigation of the conspiracy. Defense counsel asked for a one-week

continuance of the hearing, so that he would have adequate time to review the information contained

in the Government's brief, and so that he could prepare to cross-examine the witnesses. *See id.* The

district court denied the motion for a continuance, stating that neither Brown nor Carter wished to

speak with Cohen's counsel, and that because the witnesses were already at the court and were

prepared to testify, the district judge would proceed as planned. *Id.* at 5 (Page ID #1444).

Carter testified that she delivered packages of cocaine to Cohen several times, and that, on

more than one occasion, she saw Cohen cooking powder cocaine into crack cocaine. *See id.* at 9–14

(Page ID #1448–53). Carter's proffer statement, which she testified to the accuracy of, *see id.* at 19

(Page ID #1458), indicated that on two occasions when she delivered cocaine for Cohen, it was in

the amount of a half-kilogram. When Brown took the witness stand, she stated that she would be

willing to talk with defense counsel. *Id.* at 45 (Page ID #1484). When this information was

revealed, the district court permitted a continuance of the hearing to give defense counsel an

opportunity to speak with Brown with her attorney present, and allowed Cohen to re-call Brown at

a later date to testify. *See id.* at 46–48 (Page ID #1485–87). Cohen chose not to re-call Brown. *See* R. 387 (Dist. Ct. Order) (Page ID #1027). During direct examination, Brown stated that she witnessed Cohen cooking powder cocaine into crack cocaine twice in her apartment. R. 435 (Evid. Hr'g Tr. at 37–41) (Page ID #1476–80). Brown also testified that Cohen directed her to pick up drugs. *Id.* at 43 (Page ID #1482). Brown's proffer statement, which she testified to the accuracy of, *see id.* at 44 (Page ID #1483), stated that she transported at least two one-kilogram packages of cocaine for Cohen.

Agent Schimke provided testimony summarizing a proffer interview with Bryant. Schimke relayed that Bryant stated that he had cooked "around four kilograms" of crack cocaine for Cohen. *Id.* at 65 (Page ID #1504). He also testified that, based on his investigation of the drug-distribution scheme, Cohen was involved in trafficking "from two kilograms a month up to 30-plus kilograms per month" of crack cocaine. *Id.* at 72 (Page ID #1511). The Government also played several intercepted telephone conversations for the district court in which Cohen was heard discussing selling crack cocaine during June 2009.

The district court found, based on the statements of Carter, Brown, and Bryant, as well as the recorded telephone conversations, that Cohen was responsible for at least four kilograms of crack cocaine and two kilograms of powder cocaine. R. 392 (Dist. Ct. Order at 1–2) (Page ID #1171–72). The court also found that Cohen maintained a leadership role in the cocaine distribution operation. *Id.* As a result, the district judge sentenced Cohen to twenty-two years of imprisonment followed by four years of supervised release. R. 460 (Judgment at 2–3) (Page ID #1657–58). Cohen now

appeals his sentence. R. 458 (Notice of Appeal) (Page ID #1654). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. ANALYSIS

### A. Waiver of Appeal

The first issue we must address is whether the appeal-waiver provision in Cohen's plea agreement is enforceable. Cohen argues that his appeal-waiver is not enforceable because at the plea colloquy the district judge violated Rule 11 by not explaining fully the scope of the appeal-waiver provision in the plea agreement. A plea agreement is valid and enforceable only if the defendant entered into it knowingly and voluntarily. *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). We review de novo "'the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement.'" *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (quoting *Smith*, 344 F.3d at 483). Because Cohen did not object before the district court regarding a Rule 11 violation, plain-error review applies. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *Murdock*, 398 F.3d at 496. Under the plain-error standard, "[t]he defendant 'must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings." *United States v. Lalonde*, 509 F.3d 750, 757–58 (6th Cir. 2007) (quoting *Murdock*, 398 F.3d at 496); *see United States v. Robinson*, 455 F.3d 602, 610 (6th Cir. 2006).

Rule 11 states that the district court "must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal." Fed. R. Crim. P. 11(b)(1)(N). A failure of the district court to comply with this explicit requirement is "error that [i]s plain." *Murdock*, 398 F.3d at 497. In this case, like in *Murdock*, the district court failed to comply with the explicit mandate of Rule 11 by not directly addressing Cohen regarding the full scope of the appeal-waiver provision, and by not determining whether Cohen understood the provision. Accordingly, the district court committed error, and the error was plain. *See id.*

Nonetheless, this kind of plain error does not always warrant reversal, because the failure of a district court to abide by Rule 11's requirements does not necessarily affect the defendant's substantial rights. In order to determine whether the error here affected Cohen's substantial rights, we ask whether there was a "functional substitute" for the "key safeguard" in Rule 11(b)(1)(N) that is sufficient to show that Cohen's waiver of the right to appeal was knowing and voluntary. *Murdock*, 398 F.3d at 497; *see Robinson*, 455 F.3d at 610. Functional substitutes have been found when, for example, the prosecutor adequately explains the waiver provision, or when the defendant states that he read and understood the terms of the plea agreement and discussed it with his attorney. *See, e.g.*, *Robinson*, 455 F.3d at 610; *United States v. Sharp*, 442 F.3d 946, 950–52 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

We note that the prosecutor's apparent mistake in failing to read correctly the scope of the appeal-waiver weighs against a finding that the defendant's waiver was knowing and voluntary. This court, in an unpublished opinion, has refused to enforce an appeal-waiver when the district court

misstated the waiver provision in the plea agreement, stating that when "the court's misstatement comes *before* the plea is accepted and in circumstances that cause the defendant to misunderstand the terms based on the court's explanation, the defendant cannot be said to have knowingly and voluntarily waived the right[]" to appeal. *Sarlog v. United States*, 422 F. App'x 399, 403 (6th Cir. 2011). Other courts of appeals have reached the same conclusion. *See, e.g.*, *United States v. Saferstein*, 673 F.3d 237, 242–43 (3d Cir. 2012) (narrowing the construction of an appeal-waiver provision in light of the district court's mischaracterization of the plea agreement's provisions during the plea colloquy); *United States v. Manigan*, 592 F.3d 621, 628 (4th Cir. 2010) (refusing to enforce an appeal-waiver in a plea agreement when the district court, during the plea colloquy, did not specifically mention the appeal-waiver provision and mistakenly told the defendant that he had a right to appeal); *United States v. Wilken*, 498 F.3d 1160, 1167–69 (10th Cir. 2007) (refusing to enforce an appeal-waiver when the district court misstated the scope of the waiver at the plea hearing); *United States v. Bushert*, 997 F.2d 1343, 1352–53 (11th Cir. 1993) (refusing to enforce an appeal-waiver when the district court "did not clearly convey to [the defendant] that he was giving up his right to appeal under *most* circumstances").

Whether functional substitutes for the Rule 11 safeguards were present in this case is a close question. On the one hand, the appeal-waiver provision was misstated by the prosecutor, and Cohen confirmed only that he agreed to and understood the provision as explained by the prosecutor. *See* R. 434 (Plea Hr'g Tr. at 17) (Page ID #1433). Especially given that we narrowly construe plea agreements against the government, *see United States v. Caruthers*, 458 F.3d 459, 470 (6th Cir.

2006), the prosecutor's failure to state or explain the full scope of the waiver counsels against

enforcing the parts of the waiver not discussed in open court. Cohen's signature on the plea

agreement is not alone sufficient to negate the incompleteness of the explanation at the plea hearing

or to demonstrate that the waiver of the right to appeal the sentence was knowing and voluntary. *See*

*Murdock*, 398 F.3d at 498 ("In the absence of a discussion of the appellate waiver provision in open

court, we will not rely on a defendant's self-assessment of his understanding of a plea agreement in

determining the knowingness of that plea.").

On the other hand, whether the district court confirmed that Cohen understood the full plea

agreement and reviewed it with his attorney, which could constitute functional substitutes for

compliance with Rule 11(b)(1)(N), is not clear from the parties' arguments. Our review of the

transcript indicates that Cohen did not testify that he read or understood the written plea agreement,

or that he reviewed it with his attorney. He was asked only whether he signed the written agreement,

and whether he understood and agreed with the terms of the plea agreement *as stated by the*

*prosecutor*—terms that did not include the waiver of the right to appeal the sentence. R. 434 (Plea

Hearing Tr. at 15, 17) (Page ID #1431, 1433). Cohen makes conflicting assertions on this point:

in one part of his brief, he states that at the plea hearing he "acknowledged that he discussed the Rule

11 Plea Agreement with counsel," *see* Appellant Br. at 4, but later argues that "the record discloses

that the district court did not ascertain if Mr. Cohen reviewed and discussed the specific provisions

of the Rule 11 Agreement with his counsel, but only asked him if he signed the agreement." *Id.* at

19–20. The Government asserts only that Cohen stated that he "discussed the guilty plea with

counsel." Appellee Br. at 6. Further, there is some indication that Cohen requested that his counsel withdraw because counsel failed to explain fully the scope of the appeal-waiver, which is evidence that Cohen may not have understood the scope of the appeal-waiver. *See* R. 473 (Hr'g Tr., Mot. to Withdraw as Counsel at 4) (Page ID #1763). Ultimately, we need not decide the question of whether Cohen's waiver of his right to appeal was knowing and voluntary, because even assuming that the appeal-waiver is not enforceable, Cohen's challenges to his sentence fail, as we explain below. *See Caruthers*, 458 F.3d at 472 (assuming an appeal-waiver was unenforceable and concluding that the defendant's challenges to his sentence failed on the merits).

## B.  Motion for a Continuance

Cohen argues that the district court erred by denying the continuance that he requested prior to the start of the evidentiary hearing. District courts have discretion in determining when to grant motions for continuances. *See Broom v. Mitchell*, 441 F.3d 392, 414 (6th Cir. 2006) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Accordingly, we review for abuse of discretion the denial of a motion for a continuance. *United States v. Garner*, 507 F.3d 399, 408 (6th Cir. 2007). "To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *Id.*; *see Broom*, 441 F.3d at 414. Actual prejudice can be established if the defendant shows "that a continuance would have made relevant witnesses available or added something to the defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997).

There was no abuse of discretion in the district court's denial of Cohen's motion to continue the evidentiary hearing. Cohen argues that he was prejudiced by a lack of time to review four items

contained in the Government's brief, which was received by defense counsel on the day of the hearing, and that, as a result, defense counsel could not adequately prepare for the hearing. *See* Appellant Br. at 25. The four items that defense counsel purportedly did not have time to review were: (i) "detailed summaries of 25 intercepted telephone conversations"; (ii) the proffer statement of Carter; (iii) the proffer statement of Brown; and (iv) the proffer statement by Bryant, to be relayed to the court through Schimke. *Id.* at 24–25. As a preliminary matter, contrary to Cohen's contentions, the district court's denial of the motion for a continuance did not violate Federal Rule of Criminal Procedure 32. Rule 32(i)(2) incorporates Rule 26.2's provisions regarding witness statements and testimony during sentencing proceedings. *See* Fed. R. Crim. P. 32(i)(2). In turn, Rule 26.2 provides that prior statements of testifying witnesses need not be produced until after the testimony, and it further provides that the court, in its discretion, "*may* recess the proceedings to allow time for a party to examine the statement and prepare for its use." Fed. R. Crim. P. 26.2(a), (d) (emphasis added). The Government provided the proffer statements just prior to the testimony of Brown and Carter, and the district court was not required by Rule 26.2(d) to recess the proceedings prior to the hearing. Further, Cohen was permitted to review the statements and submit comments through a Sentencing Memorandum following the evidentiary hearing. *See* R. 387 (Dist. Ct. Order) (Page ID #1027). We thus do not see how the district court proceedings violated Rule 32.

Cohen's argument that his counsel was unfairly prejudiced by not receiving the summaries of the intercepted telephone calls lacks merit because Cohen admits that he received copies of all of

the intercepted calls well in advance of the hearing. *See* Appellant Reply Br. at 7. Accordingly, Cohen and his counsel had an adequate opportunity to review the calls and anticipate particularly damaging calls that the Government likely would bring to the district court's attention. Similarly, Cohen admits that prior to the evidentiary hearing, he had a copy of a redacted report regarding Carter's testimony. *See* Appellant Reply Br. at 7. Carter also testified that, as was discussed prior to the hearing, she did not want to speak with Cohen's counsel. R. 435 (Sent. Hr'g Tr. at 21) (Page ID #1460). Cohen's counsel would not have been able to interview the witness even if the district court had granted the continuance, and Cohen thus was not prejudiced regarding inadequate time to prepare for Carter's testimony.

With respect to Brown's testimony, upon learning that Brown was willing to speak with Cohen's counsel, the district judge continued the hearing to permit Cohen's counsel to speak with Brown with her counsel present, and then gave Cohen the opportunity to re-call Brown to testify. *See id.* at 46–48 (Page ID #1485–87). Cohen chose not to do so. *See* R. 387 (Dist. Ct. Order) (Page ID #1027). Thus, Cohen was granted the relief requested with respect to Brown.

Finally, Cohen has not demonstrated that he was prejudiced because his counsel did not have adequate time to review Bryant's proffer statement. Cohen does not explain how a continuance would have aided his strategy regarding Bryant's statements, other than to argue that he would have been able to "properly review and comment on Mr. Bryant's proffer." Appellant Br. at 29. Cohen's counsel was able to bring out on cross-examination that Bryant may have been biased against Cohen, a point which Cohen was able to emphasize further in his supplemental sentencing memorandum.

*See* R. 455 (Def.'s Supp. Sentencing Memo. at 10–11) (Page ID #1638–39). The district court thus did give Cohen a "reasonable opportunity" to review and comment on Bryant's statement, as required by Rule 32(i)(1)(B). Because Cohen has not demonstrated actual prejudice, we hold that there was no reversible error in the district court's denial of Cohen's motion for a continuance.

## C. Procedural Reasonableness of Cohen's Sentence

Cohen argues that his sentence was procedurally unreasonable. A district court's sentencing determinations are reviewed for reasonableness under a deferential abuse-of-discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). "A district court necessarily abuses its sentencing discretion if it 'commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, . . . [or] selecting a sentence based on clearly erroneous facts." *Id.* at 579 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court's factual findings at sentencing, including findings of drug quantity, are reviewed for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). Clear error occurs if, "having reviewed all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* at 569. An estimate is permissible as a finding of fact for drug quantity, but the finding must be supported by a preponderance of the evidence. *See United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990); *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008); *see also United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000) ("District courts may approximate the quantity of drugs for sentencing purposes based upon circumstantial evidence as long as they err on the side of

caution."). Finally, de novo review applies to the district court's "application and interpretation of the Guidelines." *Jeross*, 521 F.3d at 569 (citation omitted).

We find no clear error in the district court's drug-quantity determination that Cohen was responsible for at least four kilograms of crack cocaine and at least two kilograms of powder cocaine. Schimke's testimony summarizing his interview with Bryant indicated that Bryant cooked around four kilograms of crack cocaine for Cohen. R. 435 (Evid. Hr'g Tr. at 65) (Page ID #1504). It was not clear error for the district court to rely on Schimke's hearsay testimony regarding Bryant's proffer interview. Hearsay evidence is generally admissible in sentencing proceedings, because the Federal Rules of Evidence do not apply. *See* Fed. R. Evid. 1101(d)(3); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006). As long as the admitted hearsay testimony has "some minimal indicium of reliability beyond mere allegation," a district court may rely on the testimony without violating due process. *United States v. Silverman*, 976 F.2d 1502, 1504, 1506 (6th Cir. 1992) (en banc) (internal quotation marks omitted); *see also* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). "This standard presents a relatively low hurdle," *United States v. Manis*, 344 F. App'x 160, 165 (6th Cir. 2009) (internal quotation marks omitted), and in this case there was sufficient corroboration to permit the district court to rely on Schimke's testimony about Bryant's statements. *See United States v. Hunt*, 487 F.3d 347, 353 (6th Cir. 2007) (explaining that corroborating evidence can provide

sufficient indicia of reliability); *see also United States v. Hankton*, 432 F.3d 779, 790–91 (7th Cir. 2005) (holding that the district court did not err in relying on hearsay testimony of a law-enforcement agent, when the district court found the agent to be a "credible witness," and when portions of the agent's testimony were corroborated by other evidence). For instance, Brown testified that Bryant was present at least once in her apartment cooking crack cocaine for Cohen. R. 435 (Evid. Hr'g Tr. at 38) (Page ID #1477). The intercepted telephone calls also corroborated Schimke's testimony. The district court did not commit clear error in relying on Schimke's testimony regarding interviews conducted with co-conspirators. *See United States v. Walker*, 399 F. App'x 75, 83 (6th Cir. 2010) (permitting reliance on law-enforcement agent's testimony regarding interviews with witnesses concerning drug quantity).

Carter and Brown's testimony also supports the district court's findings. Carter testified that she took two trips to Ohio to deliver drugs to Cohen, and that she witnessed on various occasions Cohen cooking powder cocaine into crack cocaine. The drug amount that Carter referred to was approximated to be one-half kilogram each time. *See* R. 390 (Gov't Sent. Memo. at 11–12) (Page ID #1058–59). Brown also testified to the accuracy of her proffer statement, *see id.* at 44, which stated that she transported cocaine for Cohen multiple times in the amount of at least two kilograms of cocaine. The district court may rely on information provided in co-defendants' proffer statements, so long as "it is not obvious that the statements were untruthful." *United States v. Milan*, 398 F.3d 445, 457 (6th Cir. 2005). Further, numerous recordings of telephone calls, as well as Cohen's guilty plea, corroborated the witnesses' testimony that Cohen was involved in the sale and distribution of

powder and crack cocaine during the time of the alleged conspiracy. *See United States v. Bates*, 315 F. App'x 591, 594–95 (6th Cir. 2009).

Cohen's argument that the district court erroneously attributed to him conduct that occurred in 1999-2000, *see* Appellant Br. at 45–46, well outside the scope of the charged conspiracy, is not supported by the record. In this case, there is no indication that the testimony regarding events occurring in 1999-2000 was part of the basis on which the district court made its drug-quantity findings. *See* Gov't Evid. Br. (filed Jan. 19, 2011). Although Carter testified that she saw Cohen cooking crack around 2000, this event was not directly relied upon by the district court. Thus, although it is true that there are limits on the extent to which uncharged conduct may be considered relevant conduct, *see United States v. Gill*, 348 F.3d 147, 155 (6th Cir. 2003) ("[S]eparate incidents of possession with intent to distribute can be included within the scope of relevant conduct for the purpose of determining drug quantity when they qualify as part of a 'common scheme or plan' or constitute the 'same course of conduct.'" (quoting U.S.S.G. § 1B1.3)), those limitations are not a concern in Cohen's case. We reject Cohen's contention that his sentence reflects conduct that occurred years before the charged conspiracy.

In sum, we hold that the district court's findings of fact regarding the quantity of drugs attributable to Cohen for sentencing purposes were not clearly erroneous. Cohen's sentence was thus procedurally reasonable.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

16