NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  14a0822n.06

Case No. 14-5280

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 30, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BARRY DAVID THOMPSON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

**Before:  MERRITT, WHITE, and DONALD, Circuit Judges.**

**PER CURIAM.**  Defendant Barry David Thompson appeals from an order imposing a

57-month prison sentence after he pled guilty to charges of conspiracy to distribute and possess

with intent to distribute and aiding and abetting possession with intent to distribute oxycodone in

violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).  Specifically, this case asks us to

decide whether Thompson's sentence is procedurally unreasonable because the district court

incorrectly calculated the drug quantity attributable to him.  For the reasons explained below, we

hold that the district court correctly calculated the drug quantity based on credible testimony

presented to it.  We therefore AFFIRM the sentence imposed by the district court.

### I.    Factual Background

In April 2013, a federal grand jury charged Florida resident Barry David Thompson and thirteen others for their roles in an extensive oxycodone trafficking conspiracy centered in Sullivan County, Tennessee. Six months later, Thompson pled guilty to two counts without the benefit of a plea agreement.[1] During the presentence investigation, Thompson admitted to having distributed approximately 200 oxycodone pills to one of his co-defendants, Jessica White.

Based on its investigation and Thompson's prescription records from Florida, U.S. Probation ultimately deemed him responsible for 2,730 oxycodone pills (30 milligrams each), resulting in a base level offense of 28 and, because of a three-point reduction for acceptance of responsibility, a total offense level of 25. Given Thompson's criminal history, the presentence report calculated an advisory Guidelines range of 57 to 71 months' imprisonment. Thompson objected to the drug quantity attributed to him in the presentence report, arguing that his offense level should be 17, with a resulting Guidelines range of 24-30 months.

### A.    *Testimony of Co-Defendant Jessica White*

At the sentencing hearing, the United States called co-defendant Jessica White to establish the drug quantity attributable to Thompson.[2] White testified that she and Thompson were distant relatives who first met at a family function in Virginia around Thanksgiving 2011. According to White, Thompson had generally made it known that he was from Florida and had prescription pills with him. Thompson gave her three or four oxycodone pills that day and later went to her house to sell her a few more before returning to Florida.

---

[1] In the 28-count Superseding Indictment, Count One charged conspiracy to distribute and possess with the intent to distribute a quantity of oxycodone, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(C); Count Eight charged aiding and abetting in the possession with the intent to distribute a quantity of oxycodone, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.

[2] The Government also called Sergeant Buck Murray of the Sullivan County Sheriff's Office. Discussion of his testimony is not necessary to resolve this appeal.

White further testified that she purchased pills from Thompson on several other occasions, ultimately resulting in an arrangement where he would travel from Florida to Tennessee nearly every week. White stated that Thompson usually brought her 200 pills per trip and the most he brought at one time was between 300 and 400 pills. This arrangement continued for approximately six months until their arrest in June of 2012. Regarding a ledger found in Thompson's wallet, White explained that it represented only one of his trips to Tennessee and was more consistent with six hours of transactions — not six months. She also stated that Thompson would typically return to Florida with approximately $6,000 to $8,000 in cash.

### B.     Testimony of Barry David Thompson

Thompson testified on his own behalf. Although he largely agreed with White's description of how they first met at a family party, he stated that he only distributed pills after several people asked for them. He said that he knew what he was doing was illegal, but he gave pills to White because he was attracted to her.

Thompson stated that he knew White was an addict and an intravenous drug user and that he supplied her with oxycodone. He also admitted to having a sexual relationship with White, who was approximately 30 years younger than him. He denied, however, making regular trips to Tennessee to deliver the pills to her. He also testified that the ledger found in his wallet during the execution of the search warrant represented all the trips he had made from Florida to Tennessee and all of the pills he had ever distributed to White. He estimated that he had distributed an amount consistent with the ledger, plus 30 to 50 more pills as gifts to White, for a total of approximately 200 pills.

### C.     District Court's Factual Findings and Imposition of Sentence

Before ruling on the drug-quantity issue, the district court acknowledged that it was the Government's burden to prove drug quantity by a preponderance of the evidence and that the court was thus required to weigh White's and Thompson's credibility.  The court also noted that there was little evidence in the record to fully corroborate the version of events offered by either of them:    White's testimony indicated that Thompson had distributed approximately 4,400 oxycodone pills, but Thompson claimed a far lesser quantity of approximately 200 pills**.**

After reviewing the evidence, the district court deemed White the more credible witness by finding that her testimony was internally consistent and consistent with statements she previously made to the Government, and that she had little motivation to fabricate her testimony. By contrast, the court specifically found significant parts of Thompson's testimony "puzzling" and lacking credibility.  For example, the court rejected Thompson's assertion that he was "duped" into a relationship with White to provide her with pills in exchange for the promise of sex, noting that many defendants claim drug dealers take advantage of their addictions, but that in this case Thompson was the drug dealer supplying White with oxycodone.  The court also deemed White's description of the ledger to be more credible, and found that Thompson's statements about the ledger were inconsistent with other portions of his testimony**.**  Additionally, the court noted that Thompson had implausibly accused law enforcement officers in both Tennessee and Florida of falsely reporting statements he had made to them.

After fully evaluating all of the evidence and testimony, the district court ruled "based on the credible testimony in the record" that the quantity of drugs attributable to Thompson from January 2012 through June 2012 was 4,400 oxycodone pills (30 milligrams each).  That quantity increased the advisory Guidelines range to 70-87 months.  After hearing further argument from

the parties, inviting Thompson to personally allocute, and considering the 18 U.S.C. § 3553(a) factors, the district court ultimately varied downward from the Guidelines range and sentenced Thompson to 57 months' imprisonment. The court explained that the only reason Thompson's Guidelines range had increased during the sentencing hearing was because he had objected to the drug quantity set forth in the presentence report, and the court concluded that a sentence within the previously calculated Guidelines range was sufficient to satisfy the § 3553(a) factors. This timely appeal followed.

## II.     Standard of Review

We review a defendant's sentence for procedural and substantive reasonableness. *United States v. Babcock*, 753 F.3d 587, 590 (6th Cir. 2014). We may deem a sentence unreasonable only if the sentencing court abused its discretion. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)).

## III.     Analysis

This court reviews a district court's factual calculation of the drug quantity attributable to a defendant for clear error. *United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008). The Sentencing Guidelines instruct sentencing courts to calculate a defendant's base offense level from the total quantity of drugs attributable to him. U.S.S.G. § 2D1.1(c). "A drug quantity need only be established by a preponderance of the evidence, and an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). Additionally, the testimony of a co-conspirator may be sufficient to determine the quantity of drugs attributable to another co-conspirator. *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004).

Thompson contends that the United States failed to meet its burden to prove the drug quantity by a preponderance of the evidence because White's testimony during the sentencing hearing was uncorroborated.[3] If the uncorroborated testimony of an accomplice is sufficient to support a conviction, *see United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010); *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998) (citing *United States v. Hayes*, 49 F.3d 178, 181 (6th Cir. 1995)), then a co-conspirator's uncorroborated but credible testimony may sustain a drug-quantity finding under the lesser preponderance-of-the-evidence standard.

In this case, the district court specifically found that the testimony from co-defendant Jessica White was credible. Thompson's testimony, however, was "puzzling" and "not particularly credible." Thompson does not challenge the court's credibility determinations. The district court's factual determination — that Thompson was responsible for approximately 4,400 oxycodone pills — is thus not clearly erroneous.

Thompson also argues that the district court failed to apply the "estimate rule" set forth in *United States v. Walton*, 908 F.2d 1289 (6th Cir. 1990). The *Walton* court held that "when choosing between a number of plausible estimates of drug quantity, *none of which is more likely than not the correct quantity*, a court must err on the side of caution." *Id.* at 1302 (emphasis added). In this case, however, there was no reason for the district court to believe that none of the estimates presented were "more likely than not" to be correct. Having found White's testimony credible, the district court implicitly found that her estimate — 4,400 oxycodone pills — was more likely than not to be correct. Thompson's reliance upon *Walton* is thus unavailing.

Additionally, Thompson argues that the rule of lenity required the district court to resolve in his favor any alleged ambiguity in the drug quantity attributable to him. Thompson Br. 29-30.

---

[3] Thompson suggests that the United States should have called another co-defendant, Dustin Wilcox, who may have been able to corroborate White's testimony. Thompson's Br. at 33. As we hold, the district court did not abuse its discretion when it relied on White's credible testimony.

His argument fails, however, because the rule is an interpretive tool. Thompson does not contend that a criminal statute or Sentencing Guideline is ambiguous; thus, the rule does not apply here. *See United States v. Booth*, 551 F.3d 535, 541 (6th Cir. 2009).

Having determined the drug quantity attributable to Thompson, the district court calculated the corresponding Guidelines range, gave both parties an opportunity to argue for a particular sentence, invited Thompson to personally allocute, noted that it had already reviewed the letters of support submitted by Thompson's friends and family on his behalf, and discussed the § 3553(a) factors at length. Thompson's sentence is thus procedurally reasonable.

## IV.     Conclusion

Because the district court correctly calculated the amount of oxycodone attributable to Thompson, the below-Guidelines sentence imposed procedurally reasonable. The judgment of the District Court is therefore affirmed.