**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0056n.06

**Nos. 15-5068, 15-5081, 15-5087**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 28, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RONALD AVERILL, JENNIFER EARLS, and | ) | COURT FOR THE EASTERN |
| CLARENCE MILLS, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: BOGGS, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A grand jury indicted defendants Ronald Averill, Jennifer Earls, and Clarence Mills for conspiring to distribute oxycodone. Each defendant pleaded guilty to the charge. Averill admitted distributing 10,000 oxycodone pills as part of a plea agreement, while Earls and Mills challenged the number of pills the government attributed to them in their respective presentence reports (PSRs), and requested an evidentiary hearing. Their strategy backfired. Following the hearing, the district court concluded that Earls and Mills distributed a greater number of pills than initially estimated. Defendants appeal their sentences. For the reasons detailed below, we affirm the district court's judgment as to each defendant.

I.

"We review a district court's sentencing decision for reasonableness, which has both procedural and substantive components." *United States v. Garcia-Robles*, 640 F.3d 159, 163 (6th Cir. 2011) (citations omitted). A sentence within the Guidelines range is presumed reasonable, "and it is incumbent upon the defendant" to rebut that presumption. *United States v. Evers*, 669 F.3d 645, 661 (6th Cir. 2012).

Each defendant contends his or her sentence is procedurally unreasonable. A sentence is procedurally unreasonable if, for instance, the district court improperly calculates the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, ignores the factors set forth in 18 U.S.C. § 3553(a), renders a sentence based on clearly erroneous facts, or fails to adequately explain a chosen sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). We review preserved procedural reasonableness claims for an abuse of discretion and unpreserved claims for plain error. *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014).

A.

We first address Averill's procedural challenge. Under the Guidelines, Averill's 10,000 oxycodone pill-count corresponded to a base offense level of 30, which was reduced to 27 for acceptance of responsibility. *See* U.S.S.G. § 2D1.1(c)(5) and § 3E1.1. Combined with a criminal history category of four, Averill's resulting Guidelines range was 100 to 125 months. After weighing the § 3553 factors, the district court sentenced Averill to 120 months' imprisonment, followed by five years' supervised release.

Averill faults the district court for sentencing him without considering "significant, compelling arguments [for] mitigation," including his "quick acceptance of responsibility," the time he served in state prison for drug trafficking, and the fact that he "got sober" and withdrew

from the conspiracy prior to his arrest. Though Averill raised these arguments at sentencing, he concedes that our review is limited to plain error because he did not object when "the district court made the requisite *Bostic* inquiry." *Evers*, 669 F.3d at 661 (footnote and citation omitted).

Averill's claim fails under this standard: a "district court's mere failure to fully *explain* the extent of its consideration of sentencing factors" does not constitute plain error. *United States v. Houston*, 529 F.3d 743, 751 (6th Cir. 2008). Moreover, if plain error could occur in this context, it did not occur here. The district court considered all of the "compelling" factors Averill cites in favor of mitigation.

A sentencing court is not required to address each of the defendant's arguments "head-on." *United States v. Taylor*, 696 F.3d 628, 634 (6th Cir. 2012). Rather, when the sentence is within the Guidelines range, it is enough that the court "listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Id*. The district court did that for Averill.

First, the court credited Averill for his "quick acceptance of responsibility" by lowering his base offense level from 30 to 27, in keeping with U.S.S.G. § 3E1.1. "Because the defendant here received a three-level reduction for acceptance of responsibility, some 'extraordinary circumstance' must be present to warrant further downward departure." *United States v. Biehl*, Nos. 98-3318, 98-3346, 1999 WL 98600, at *3 (6th Cir. Jan. 25, 1999). No "extraordinary circumstance" is present in this case. Second, the court acknowledged Averill's efforts at sobriety, remarking that he "certainly is salvageable," while recommending parenting classes, drug treatment, and vocational training. The court did not owe Averill an explanation as to why this factor did not justify mitigation "given that the issue was simple and it was obvious that the court had considered his claim from the context." *United States v. Sexton*, 512 F.3d 326, 332

(6th Cir. 2008). Third, the court explicitly addressed Averill's state-court convictions—finding that they warranted a greater sentence, instead of a lesser one—since time in state prison failed to curb Averill's criminal activity. "My hope would be if there is an appropriate punishment at the state level, that a person receives that deterrence and is not as inclined to commit another offense. . . . [B]ut it appears to me that the state system is not sending the message to individuals that these are serious offenses, and they'll be dealt with severely, seriously." Because the "context and the record . . . make clear" that the district court considered Averill's arguments, he has not demonstrated plain error. *Taylor*, 696 F.3d at 634.

B.

Earls and Mills also assert procedural reasonableness claims, arguing that the district court clearly erred in determining the quantity of pills attributable to them.

For defendants convicted of drug crimes, the base offense level at sentencing depends upon the amount of drugs involved in the offense. *See* U.S.S.G. § 2D1.1(c). If the exact amount of drugs is undetermined, "[a]pproximations are completely appropriate." *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000). The prosecution must prove the quantity of drugs attributable to the defendant by a preponderance of the evidence. *United States v. Jackson*, 470 F.3d 299, 310 (6th Cir. 2006). The court's approximation should be "supported by competent evidence," with a "minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (citation omitted). As a factual finding, the district court's quantity determination is affirmed unless clearly erroneous. *Jackson*, 470 F.3d at 310.

At the outset, Mills' PSR estimated a total quantity of 10,000 pills, amounting to a base offense level of 30, which was then lowered to 27 for acceptance of responsibility. With a

criminal history category of five, Mills' resulting Guidelines range was 120 to 150 months. Earls' PSR stated she distributed approximately 3,000 oxycodone pills, corresponding to a base offense level of 26, which was also reduced to 23 for acceptance of responsibility. Combined with a criminal history category of three, Earls faced a Guidelines range of 57 to 71 months' imprisonment. Both defendants objected to the government's pill count, prompting the court to hold an evidentiary hearing on the issue.

At the hearing, Drug Enforcement Agency (DEA) Special Agent Brian Metzger testified that the government's calculations were based on information gleaned through a series of witness interviews and controlled buys. DEA Officer Gerald Hughes conducted most of the interviews, with Metzger present for "several" of them. Metzger communicated with Hughes throughout the investigation and assumed responsibility for the case when the DEA transferred Hughes. He explained the substance of the interviews based on his review of the investigation materials.

According to Metzger, Dan Mosier offered the DEA the most specific information regarding drug quantity. Mosier served a 30-day house arrest in the home Mills shared with girlfriend Judith Meadors, a coconspirator who pleaded guilty to distributing 3,000 oxycodone pills. During his house arrest, Mosier witnessed Averill and Earls supply Mills with oxycodone on a daily basis, giving him 10 to 30 pills at a time, two to three times a day. Mosier estimated that Averill and Earls acted as Mills' suppliers for roughly a year and a half, between October or November 2011 and March 2013.

Other witnesses reported that Mills' history as an oxycodone dealer began years before his involvement with Averill and Earls. One unnamed witness bought pills from Mills for "five to six years" prior to his 2012 interview with the DEA. The unidentified individual purchased roughly 80 pills at a time, though without saying how often the sales occurred. Witness Anthony

Damron also bought drugs from Mills "regularly," from the "late 90s" to 2002, specifying that he purchased two pills a day, every day, between 2000 and 2002. Thereafter, Damron continued as a "[s]poradic[,] . . . [i]ntermittent[]" customer until November 2012. Ashley Sulfur was another of Mills' daily customers, buying 6 to 10 oxycodone pills every day for three to four years. Still another witness, Kathy Willard, reported buying 50 to 60 pills from Mills a month, over a six-month period between June 2012 and January 2013. Finally, James Lee stated that he and girlfriend Heather Cobb purchased 10 to 20 pills from Mills every other day over approximately a year and a half. "[A]t some point" within that timeframe, Lee "cut out Mr. Mills . . . as kind of the middleman," and started buying directly from Averill and Earls. Lee pleaded guilty to conspiring to distribute oxycodone, admitting responsibility for 4,000 pills.

Metzger testified that Earls was "present" with Averill for four of the DEA's controlled buys, each of which involved the purchase of 30 to 50 oxycodone pills. Her actions demonstrated knowledge of the conspiracy. For instance, on one occasion, Earls answered an informant's call to set up the transaction. Another time, she "passed [the pills] directly" to the informant. Metzger described Earls as an equal partner to Averill in the conspiracy. "[E]verybody we interviewed never just said Ron, or they never just said Jennifer. It was always Ron and Jennifer or Jennifer and Ron. So I believe everyone thought them to be equal."

Defendants called United States Probation Officer Richard Mills as their only witness. Officer Mills explained the Probation Department rendered its quantity estimates by considering the numbers provided by the witnesses in conjunction with the frequency of their purchases, as well as the pleas entered by Averill, Lee, and Meadors, who admitted responsibility for 10,000, 4,000, and 3,000 pills respectively. The Department based its calculations on the "low end" of each number range identified by the witnesses to reflect a "conservative" estimate. However,

after hearing Metzger's testimony, Officer Mills opined that the Department had been too conservative; he now believed Mills' actual pill count was closer to 14,000 or 16,000, and Earls' was closer to 5,000.

The district court agreed. It found Mills responsible for 14,000 oxycodone pills and Earls responsible for 5,000 pills. For Mills, the increased pill count did not affect his base offense level or the Guidelines range of 120 to 150 months, but was weighed at sentencing along with the § 3553 factors. For Earls, by contrast, a finding of 5,000 oxycodone pills meant an increased base offense level, implicating the district court's notice obligations under Federal Rule of Criminal Procedure 32(h).[1] "[T]o eliminate th[e] entire issue," the court declined to increase Earls' base offense level, opting instead to do what it did for Mills and consider the higher pill count along with the § 3553 factors at allocution.

Ultimately, the court sentenced Earls to 71 months' imprisonment, followed by five years' supervised release. It sentenced Mills to 125 months' imprisonment (including 10 months' credit for time served in state prison), also followed by five years' supervised release.

Earls and Mills argue the district court's drug-quantity findings are clearly erroneous because they are based on double hearsay relayed through Metzger. But the hearsay character of evidence was not a bar to its consideration. "Generally, the Federal Rules of Evidence do not apply to sentencing proceedings," *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007), and "sentencing judges are not restricted to information that would be admissible at trial." U.S.S.G. § 6A1.3 cmt. Instead,

---

[1]That rule requires the sentencing court to provide the parties "reasonable notice" before "depart[ing] from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h).

> [i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence . . . *provided that the information has sufficient indicia of reliability to support its probable accuracy.*

*Moncivais*, 492 F.3d at 658–59 (quoting U.S.S.G. § 6A1.3(a)). Establishing the minimum indicia of reliability for disputed information is "a relatively low hurdle." *Id.* at 659. As long as the government presents "*some* evidentiary basis beyond mere allegation in an indictment," the hurdle is cleared, and the information can be taken as fact at sentencing. *Id.*

Defendants assert that the informants' statements in this case are inherently unreliable because the witnesses faced arrest and had an incentive to implicate others. We disagree. More than once, we have "refused . . . to categorically exclude from sentencing consideration a coconspirator's hearsay statements as 'inherently' or 'presumptively' unreliable." *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013); *see, e.g.*, *Moncivais*, 492 F.3d at 659–60. "Testimonial evidence from a co-conspirator may be sufficient to determine the amount of drugs for which a defendant should be held accountable, even where the co-conspirator has reason to believe that he may receive a reduced sentence as a result of his or her testimony." *United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004). Statements by coconspirators may be accorded greater weight where they corroborate one another, or are substantiated by other circumstantial evidence. *Johnson*, 732 F.3d at 583.

Here, other evidence corroborated Mosier's statement against Earls. Metzger testified that all witnesses considered Earls an equal to Averill in the drug trade. Indeed, Earls participated in the same controlled buys as Averill and, at some point, she and Averill began selling directly to Lee and Cobb. Mosier stated that Earls and Averill (together) supplied Mills with 10 to 30 pills at a time, two to three times a day for a year and a half, for a conservative

total of 10,960 pills (20 x 548 days), a number matching Averill's plea of responsibility for 10,000 pills. Officer Mills recommended reducing the 10,960 pill total to 5,000 to account for the fact that Earls had been a coconspirator for a shorter time period than Averill.

Attempting to rebut this evidence, Earls' counsel represented that she was involved in the conspiracy only for the duration of her romantic relationship with Averill—specifically, the six-month period between December 2012 and June 2013. Counsel later acknowledged, however, that Earls gave birth to the couple's child in March 2013, meaning her relationship with Averill—and her participation in the conspiracy—dated back further, just as Mosier reported. While the district court acknowledged Mosier may have had "a motive . . . to puff," "[t]here [wa]s no advantage or disadvantage for him to put that date a year-and-a-half prior to March 2013." The start of Mosier's timeline (sometime in late 2011) roughly coincided with Averill's release from state prison, lending his statement additional credibility. Earls did not draw the lower court's attention to "anything that's inconsistent with [Mosier's] . . . statements" and does not challenge its decision to calculate drug quantity according to the duration of her participation in the conspiracy.[2] She identifies no basis to conclude that the district court's finding of 5,000 oxycodone pills was clearly erroneous.

The evidence behind Mills' pill count is even more substantial. Mosier's claim that Averill and Earls supplied Mills with 10,960 pills was corroborated by five other witnesses who reported buying significant amounts of oxycodone from Mills for months or years at a time. Their statements in turn confirmed Mosier's assertion that he saw Mills conduct "no less than

---

[2]Insofar as Earls believes the district court's finding of 5,000 pills was grounded in a conclusion that the entire conspiracy involved a total of 14,000 pills in its last year and a half, she is wrong. The district court rendered an individualized pill count for Earls based largely on Mosier's timeline.

100 transactions a day" during his house arrest. Not all witnesses provided numbers as specific as Mosier, but those who did placed Mills comfortably over the 14,000 mark. For instance, witness Ashley Sulfur bought between 6 and 10 pills from Mills every day for three or four years. Subtracting the year and a half period that Mills was supplied by Averill and Earls to avoid double-counting, Mills sold Sulfur a minimum of six pills a day for a year and a half, resulting in a conservative estimate of 3,288 oxycodone pills (6 x 548 days). Thus, without regard to the other witnesses, the accounts from Mosier and Sulfur alone establish that Mills distributed at least 14,248 oxycodone pills. *See Jeross*, 521 F.3d at 571 (upholding the trial court's sentence for 100,000 Ecstacy pills where the evidence "suggest[ed] that the conspiracy involved well *over* 100,000 pills"). Mills does not undermine the probative value of the witness statements by dismissing them as hearsay from "addict-informants" who participated in the same conspiracy he did. *See Moncivais*, 492 F.3d at 659–60 ("Defendant points to nothing about Laurel's proffer statement that suggests that it is unreliable, beyond its character as hearsay and the fact that Laurel was involved in the same conspiracy as Defendant."). As the district court found, "when we look at corroboration in the case of all these other folks, it does tend to indicate that this conspiracy . . . involved . . . a pretty significant number of pills." The district court's finding that Mills was responsible for 14,000 pills was supported by a preponderance of the evidence, and defendants have not rebutted the presumption that their within-range sentences are procedurally reasonable. *Evers*, 669 F.3d at 661.

C.

Lastly, Averill contends his sentence is substantively unreasonable.[3]  "A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012).  We review substantive reasonableness for an abuse of discretion. *United States v. Woodward*, 638 F.3d 506, 510 (6th Cir. 2011).  Again, here, a within-range sentence is presumed reasonable, *Cunningham*, 669 F.3d at 773, and "[t]he defendant shoulders the burden of showing substantive unreasonableness," *Woodward*, 638 F.3d at 510.

Averill's belief that "a sentence of far less than 120 months would have been sufficient" does not carry that burden.  The defendant's personal dissatisfaction with his sentence "is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects." *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006).  It is not enough "that, given his personal characteristics, a different sentence was *justified*"; Averill must prove that "a different sentence was *required*." *United States v. Brown*, 579 F.3d 672, 687 (6th Cir. 2009).  A different sentence was not required in this instance, "and that is all we have license to consider." *United States v. Overmyer*, 663 F.3d 862, 864 (6th Cir. 2011).  Accordingly, Averill has not demonstrated an abuse of discretion.

II.

We affirm the district court's judgment in each case.

---

[3]Mills repackages his procedural argument that the government's evidence was unreliable as a challenge to substantive reasonableness.  For the reasons previously stated, we reject that challenge.