NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0330n.06

No. 19-2424

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 08, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff-Appellee,     )
                                )
                                )   ON APPEAL FROM THE UNITED
v.                              )   STATES DISTRICT COURT FOR
                                )   THE WESTERN DISTRICT OF
RAYMOND CURT CARTER,            )   MICHIGAN
                                )
        Defendant-Appellant.    )


BEFORE: GILMAN, KETHLEDGE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Convicted of distributing cocaine, Raymond Carter alleges two sentencing errors: that the district court wrongly calculated the quantity of drugs involved in his crime and that it imposed a substantively unreasonable sentence. We disagree and affirm.

In early 2018, an informant told Michigan police that Jason Lopez was receiving illegal drugs in the mail from a Texas source for distribution in northern Michigan. The United States Postal Inspection Service and Michigan State Police began investigating Lopez. They eventually obtained a warrant to search a package at a Michigan post office that had been addressed to Lopez from Texas. They found about two kilograms of cocaine inside the package. After delivering it to Lopez's home the next day, the police arrested him. Lopez told law enforcement that Raymond Carter had been his Texas source. The same day, Lopez called Carter on a recorded line while the

police listened in. During the call Carter acknowledged that he had sent the cocaine, explained "I do this for a living" when discussing how he had packaged the drugs, and said that he would let Lopez know the amount that Lopez owed him for "all of these months."

Carter pleaded guilty to distributing at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). This conviction typically triggers a 60-month mandatory-minimum sentence, but the government agreed not to oppose Carter's request for relief from this mandatory minimum under the statutory safety valve in 18 U.S.C. § 3553(f). Carter's presentence report thus calculated his guidelines range as 46 to 57 months' imprisonment. This range rested in part on a calculation of the total drug quantity involved in Carter's crime, which helped determine Carter's base offense level. *See* U.S.S.G. § 2D1.1(c) (2018). Lopez had told law enforcement that, in addition to the two kilograms of cocaine in the package, Carter had previously provided him with three pounds of marijuana and two kilograms of cocaine. Carter's presentence report included these additional drug amounts in the total drug quantity when determining his base offense level and guidelines range.

At sentencing, Carter objected to adding the extra two kilograms of cocaine to his total drug quantity. If those drugs were excluded, his guidelines range would have been 30 to 37 months' imprisonment. The district court, however, found that the government met its burden (proof by a preponderance of the evidence) to establish that Carter had sold the extra two kilograms of cocaine to Lopez. It reasoned that Carter's "own words" in the recorded conversation suggested that they had a "continuing relationship" and adequately corroborated Lopez's statements about the earlier transactions.

Turning to the sentencing factors in 18 U.S.C. § 3553(a), the court recognized that the guidelines range was 46 to 57 months' imprisonment. *Id.* § 3553(a)(4). It also recognized the serious nature of the offense given the large amount of drugs involved. *Id.* § 3553(a)(1). But the court took account of Carter's unfortunate upbringing. *Id.* And it raised a concern with "unwarranted sentence disparities" because Lopez had received only a 30-month sentence. *Id.* § 3553(a)(6). The court opined that "it's difficult, if not impossible, to show who was [the] more culpable" of the two—Lopez or Carter. The court thus varied downward from the guidelines range by imposing a 30-month sentence, to be followed by a three-year term of supervised release.

Carter now appeals.

1. Carter first challenges the district court's factual finding that he should be held responsible for the extra two kilograms of cocaine under U.S.S.G. § 2D1.1. He faces a difficult standard of review. We review a district court's finding about the drug quantities attributable to a defendant under the clear-error standard and may reverse only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Vasquez*, 560 F.3d 461, 472 (6th Cir. 2009) (citation omitted). The district court also "may make an estimate supported by competent evidence" when the quantity of drugs involved is unknown. *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004) (quoting *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000)). Yet the evidence justifying that estimate must rise above "mere allegation," and "the court should err on the side of caution in making its estimate." *Id*. The court may rely on hearsay in making this determination, "provided that the information has sufficient indicia of reliability." *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007) (quoting U.S.S.G. § 6A1.3) (emphasis omitted); *United States v. Averill*, 636 F. App'x 312, 317 (6th Cir. 2016).

Here, the district court had a sufficient basis to attribute to Carter the extra two kilograms of cocaine. The presentence report indicated that, as part of his plea agreement, Lopez confessed that he had received the additional drugs from Carter between late 2017 and April 2018. *See United States v. Ocampo*, 402 F. App'x 90, 105–06 (6th Cir. 2010). And Carter's statements to Lopez during their recorded conversation bolstered Lopez's estimate by confirming their continuing relationship and Carter's ongoing drug dealing. Lopez, for example, asked Carter how much he owed for the drugs, and Carter responded that he would let Lopez know after he "put all the calculations together for all of these months." This "circumstantial evidence" sufficiently corroborated Lopez's estimate to allow the district court to rely on the estimate. *Averill*, 636 F. App'x at 317; *United States v. Cohen*, 515 F. App'x 405, 412–13 (6th Cir. 2013).

Carter's responses do not change our minds. He first suggests that the district court failed to follow our test requiring district courts to err on the side of "caution." That test guides a district court when it must use imprecise evidence to calculate unknown drug quantities. *United States v. Penaloza*, 784 F. App'x 341, 346 (6th Cir. 2019); *United States v. Walker*, 399 F. App'x 75, 83 (6th Cir. 2010). "[W]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990). Here, however, Lopez identified a "precise" drug amount—two additional kilograms of cocaine. *Penaloza*, 784 F. App'x at 346. Carter's concern is not that the district court relied on a vague estimate to set a speculative drug quantity. His concern is that the court relied on a clear estimate from an unreliable source. This type of credibility challenge does not implicate what we have called our "estimate rule." *United States v. Thompson*, 588 F. App'x 449, 453 (6th Cir. 2014) (per curiam).

Turning to credibility arguments, Carter asserts that the district court should not have believed Lopez because he gave inconsistent statements to law enforcement. Lopez originally said that Carter personally delivered the earlier shipments of cocaine to Michigan and then backtracked and said he mailed the shipments. Yet the district court did not clearly err in finding Lopez credible, especially given the recorded conversations that corroborated his statements. *See Walker*, 399 F. App'x at 83; *Cohen*, 515 F. App'x at 413.

2. Carter next challenges the substantive reasonableness of his 30-month sentence, which fell well below both his guidelines range of 46 to 57 months and the usual 60-month mandatory minimum that applies to Carter's offense. "We typically start with an appellate presumption of reasonableness if the district court imposes a sentence within the Guidelines range (or a sentence below that range where, as here, the defendant is the one appealing)." *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019). Carter cannot overcome the presumption in this case.

The district court did not pick a sentence that can be described as "too long" when assessed against the factors in 18 U.S.C. § 3553(a). *Id.* (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). The court properly calculated the guidelines range (46 to 57 months' imprisonment). 18 U.S.C. § 3553(a)(4). It adequately considered Carter's serious crime and unfortunate upbringing. *Id.* § 3553(a)(1). It recognized the purposes of sentencing. *Id.* § 3553(a)(2). And it sought to avoid "unwarranted sentence disparities" by imposing the same 30-month sentence that Lopez received. *Id.* § 3553(a)(6).

In response, Carter argues that the court failed to avoid those unwarranted disparities because he received a three-year term of supervised release whereas Lopez received only a two-year term. But Carter is fortunate that the district court relied on this comparison at all. "Section 3553(a)(6) 'concerns *national* disparities,' and does not require district courts to consider

5

'disparities between codefendants.'" *United States v. Arellanes-Pena*, 729 F. App'x 430, 434 (6th Cir. 2018) (quoting *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008)).  Even so, the district court could reasonably see a distinction between these defendants: Lopez rendered substantial assistant to the government; Carter did not.

 We affirm.