RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                            *Plaintiff-Appellee,*

                                                    No. 09-1802

            *v.*

MATTHEW WOODARD,
                            *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 08-00191-001—Janet T. Neff, District Judge.

Argued:  December 8, 2010

Decided and Filed:  April 21, 2011

Before:  MARTIN, NORRIS, and COOK, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:**  Jacob H. Huebert, Columbus, Ohio, for Appellant.  Nils R. Kessler,
ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:**  Jacob H. Huebert, Columbus, Ohio, for Appellant.  Mark V. Courtade,
ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

COOK, Circuit Judge.  Matthew Woodard pleaded guilty to the manufacture of
1,000 or more marijuana plants, an offense that carries a mandatory minimum sentence
of ten years' imprisonment.  At sentencing, the district court calculated an offense level
of 25 and a criminal history category of III.  The district court departed upward two
levels to a criminal history category of V—resulting in a guidelines range of 120–125
months.  The court then addressed the 18 U.S.C. § 3553(a) factors and granted an

upward variance, sentencing Woodard to 180 months' imprisonment. Woodard appeals, contending that the district court erred by (1) departing upward based on actions that formed part of the same course of conduct as the offense of conviction; (2) failing to explain its placement of Woodard's criminal history at category V rather than IV; and (3) imposing a substantively unreasonable sentence. We affirm.

I.

A.

Woodard first presses his view that the court improperly considered conduct pertaining to his offense of conviction when granting an upward departure for criminal history. Woodard focuses on two factors in particular: his use of his friend Chris Brown as a straw man to purchase real estate on his behalf—including the property used for the marijuana-growing operation—and his pressing Brown to "plead the [F]ifth" when authorities questioned him. Because defendant's counsel failed to object at the sentencing hearing, we review under the well known plain-error standard. *See United States v. Blackie*, 548 F.3d 395, 398–99 (6th Cir. 2008).

Assuming for analysis purposes that these actions were indeed part of the same course of conduct as Woodard's offense, we agree that the district court erred in considering them in departing upward. Section 4A1.3(a)(1) permits an upward departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). In describing the type of conduct that may merit such a departure, the guidelines repeatedly emphasize the defendant's *past* conduct, directing the court to consider various types of "[*p*]*rior* similar misconduct," "[*p*]*rior* similar adult criminal conduct," and "[*p*]*rior* sentence(s)." *Id*. § 4A1.3(a)(2) (emphasis added). The guidelines define "prior sentence" as "any sentence previously imposed upon adjudication of guilt . . . *for conduct not part of the instant offense*." *Id.* § 4A1.2(a)(1) (emphasis added).

Consistent with these guidelines provisions, this court held in an unpublished opinion that "[i]f a criminal act was part of the . . . same course of conduct . . . as the offense[] of conviction, then, as a matter of law, it was an impermissible ground upon which to base a criminal history departure." *United States v. Washburn*, No. 94-6292, 1995 WL 351331, at *2 (6th Cir. June 9, 1995) (per curiam) (third alteration in original) (internal quotation marks and citation omitted). This rationale accords with the manner in which this court calculates the baseline criminal history category before considering a departure—excluding from consideration conduct that formed part of the instant offense. *See United States v. Tilford*, 85 F. App'x 516, 518–20 (6th Cir. 2004) (determining whether criminal history was properly calculated based on whether aiding and abetting was part of instant offense or a prior sentence); *United States v. Hicks*, 4 F.3d 1358, 1362–63 (6th Cir. 1993) (finding state cocaine conviction properly included in criminal history calculation because it was a prior offense unrelated to the present charge). None of this, of course, constrains a district court's broader authority to consider various factors under § 3553(a). *See United States v. Tristan-Madrigal*, 601 F.3d 629, 635 (6th Cir. 2010); *United States v. Herrera-Zuniga*, 571 F.3d 568, 589 (6th Cir. 2009).

Woodard's argument fails under plain-error review, however, because he cannot show an impact on his substantial rights. "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223–24 (6th Cir. 2010). No such probability exists here. Besides the two challenged factors, the district court relied on numerous other justifications for its upward departure:

> His criminal history offenses include larceny, drugs, violence, he's violated probation on numerous occasions, many, many traffic violations, 19 misdemeanors in ten years. He's never spent more than 30 days in jail by his own . . . admission. Then we have all of these reports of domestic violence, and the recitation in paragraph 84 [of the PSR regarding anger-related issues] which just goes on and on and on and includes his participation in a confrontation that ended up with someone being killed. There's report of his driving his car into another vehicle on

> a couple of occasions, intimidating witnesses or intimidating people who would complain about his conduct.

*Cf. Washburn*, 1995 WL 351331, at *2 (reversing Section 4A1.3 departure where, absent the impermissible factor, no reasoned explanation supported departure).  Given the district court's lack of "any doubt . . . of the significant potential possibility, likelihood that [Woodard] will reoffend," and statement that a "[c]riminal [h]istory [c]ategory [III] seriously under represent[ed] the seriousness of Mr. Woodard's criminal history" (a fact that even Woodard's counsel conceded), no reasonable likelihood exists that, absent the allegedly impermissible factors, the court would have found that a criminal history of category III adequately captured Woodard's past.  The court's upward *variance* to 180 months further removes any uncertainty that consideration of these factors affected Woodard's substantial rights.  *See United States v. Williams*, No. 08-6409, 2010 WL 3724594, at *7 (6th Cir. Sept. 13, 2010) (finding "no plausible argument" that district court would have awarded lower sentence where district court "varied upward substantially from the higher Guidelines range . . . , clearly evincing the court's belief that even the higher Guidelines range was an insufficient sentence after considering the § 3553(a) factors" (emphasis omitted)).

## B.

Woodard next contends that the district court improperly issued a two-category criminal history upward departure without adequately explaining why a one-category departure would not suffice.  We again review for plain error.  *See Blackie*, 548 F.3d at 398–99.  After explaining why it rejected a criminal history category of III, the district court then did not say why it passed over category IV before settling on category V.  Yet, even if we assume this to be error, Woodard again cannot show it had any effect on his substantial rights.  Raising Woodard's criminal history one category would only have increased his guidelines range to 84–105 months—no increase at all considering the 120-month mandatory minimum.  Pegging his criminal history at category V still subjected Woodard to a guidelines range of only 120–125 months.  In light of this circumstance, together with the factors explained above—including the court's ultimate upward

variance and statement that category III seriously underrepresented Woodard's criminal history—Woodard again cannot show "a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *Wilson*, 614 F.3d at 223–24.

C.

Finally, Woodard claims that the district court's upward variance resulted in an unreasonable sentence. We review the substantive reasonableness of the defendant's sentence for abuse of discretion. *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008). The defendant shoulders the burden of showing substantive unreasonableness. *See id*. at 756. "The touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

Woodard faults the district court for according undue weight to his history and characteristics and to the seriousness of his offense. With respect to his history and characteristics, the district court wrongly placed him, he insists, in "the very top of the category":

> The defendant has led a life of crime, petty and serious, for the last ten years. He's a 29-year-old man who lacks a high school diploma. He has two children with two different women but he's never been married. There is evidence of drug abuse in his history and violence in his criminal history. He has virtually no work history. And his mental and physical health are not particularly good.

Woodard acknowledges that he "does have a history of trouble with the law," but disputes the seriousness of his past crimes and whether they involved violence. Woodard's presentence report tells a different story, as detailed by the district court at sentencing. In addition to nineteen misdemeanors, Woodard's criminal history includes multiple drug- and theft-related convictions as well as an assault-and-battery conviction. His records also list multiple episodes of domestic violence, two incidents of ramming his vehicle into another vehicle, and threatening a neighbor in front of police. With respect to the seriousness of the offense, the district court noted that the "very large amount of marijuana being cultivated" placed Woodard's case outside "the heartland."

Though Woodard argues that his offense level accounted for this drug quantity, the district court barely mentioned this factor.  The district court thus did not accord undue weight to either Woodard's history and characteristics or the seriousness of his offense. *See United States v. Webb*, 616 F.3d 605, 611 (6th Cir. 2010).

The court, moreover, appears to have relied at least equally on two other sentencing factors—the need to afford adequate deterrence and to protect the public from the defendant's further crimes.  In discussing these factors, the court described Woodard as "a ticking time bomb," "a violent man," "a dangerous guy," and as someone who lacked "any regard really for the law or much of anything except his own needs."  The court also described the need to rehabilitate the defendant, which it characterized as "perhaps the most important . . . factor of all because I think that a great deal of remediation or rehabilitation is called for for this man."  In light of the district court's reasoned consideration of the § 3553(a) factors, we affirm Woodard's sentence.  *See United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006) ("When a district court considers the relevant 3553(a) factors in-depth and reaches its determination that the appropriate sentence varies outside the advisory guidelines range, we are very reluctant to find the sentence unreasonable.").

## II.

For the above reasons, we affirm the judgment of the district court.