NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0395n.06

Case No. 18-5841

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 01, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GENE PAUL PENDYGRAFT, | ) | KENTUCKY |
| | ) | |
| Defendant – Appellant. | ) | |
| | ) | |

**BEFORE:  COLE, Chief Judge; GRIFFIN and BUSH, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.**  Gene Paul Pendygraft pled guilty to a single count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), related to Pendygraft's receipt of one still pornographic image and seven pornographic videos.  The district court sentenced Pendygraft to 292 months' imprisonment and supervised relief for life.  Pendygraft appeals, arguing that his sentence is substantively unreasonable.  For the reasons that follow, we **AFFIRM**.

"We review the substantive reasonableness of a sentence for abuse of discretion . . . ." *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016) (citing *United States v. Smith*, 516 F.3d 473, 477–78 (6th Cir. 2008)).  A sentence within the Guidelines range is afforded a presumption of reasonableness on appellate review.  *See United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).  This "presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the

Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Rita v. United States*, 551 U.S. 338, 347 (2007). Also, "[t]he defendant shoulders the burden of showing substantive unreasonableness." *United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011).

"For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation and internal quotation marks omitted). In other words, substantive reasonableness focuses on whether "a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "A sentence may indeed be substantively unreasonable if a district court places too much weight on any one factor." *United States v. Peake-Wright*, 567 F. App'x 355, 358 (6th Cir. 2014) (citing *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)). But when a defendant merely asks us to "balance the [§ 3553(a)] factors differently than the district court did," such a request "is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006) (emphasis omitted); *accord United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

The district court calculated Pendygraft's Guidelines range to be from 292 to 365 months' imprisonment, and neither party appeals that determination. At sentencing, the district court denied Pendygraft's motion for a downward variance and sentenced him to 292 months' imprisonment, to run concurrently with an undischarged state sentence. Pendygraft offers four reasons why he believes his sentence, which is at the lower bound of his Guidelines range, is

unreasonably long: (1) USSG § 2G2.2 does not properly reflect the goals of 18 U.S.C. § 3553(a); (2) Pendygraft's criminal history overstates his culpability; (3) the district court failed to consider the need to prevent unwarranted sentencing disparities; and (4) the district court erred in relying on an allegedly discredited academic study (the "Butner Study"). We address each concern in turn.

A.     USSG § 2G2.2

The district court increased Pendygraft's offense level based on various subsections of USSG § 2G2.2 because the offense involved the use of a computer, ((b)(6)), images involving a minor under twelve years of age, ((b)(2)), images portraying sadistic and masochistic conduct, ((b)(4)(A)), a number of images between 300 and 599,[1] ((b)(7)(C)), and the distribution of images for valuable consideration (in this case, in exchange for other pornographic pictures), ((b)(3)(B)). Pendygraft does not argue that these subsections do not apply; instead, he argues that they fail to take into account modern-day technology and to differentiate the level of culpability among defendants. The gist of his argument appears to be that Congress has failed to update the child-pornography Guidelines to account for the prevalence of these factors and to account for the frequency with which district courts grant downward variances.

There is, however, no requirement "that a district court . . . examine the underlying basis for a Guideline before imposing a sentence." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). Indeed, we have already rejected Pendygraft's argument:

> [W]e do not think a judge is required to consider . . . an argument that a guideline is unworthy of application in any case because it was promulgated without adequate deliberation. He should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline. For if he is required to do that, sentencing hearings will become

---

[1] As per the relevant application note, each of the seven videos possessed by Pendygraft counted as seventy-five images for purposes of § 2G2.2(b)(7), for a total of 526 images (including the one still image). USSG § 2G2.2, comment. (n.6(B)(ii)).

unmanageable, as the focus shifts from the defendant's conduct to the "legislative" history of the guidelines.

*Ibid*. (emphasis omitted) (quoting *United States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009)).

At bottom, Pendygraft is arguing that the Guidelines ought to be other than they are. This is an argument that defendants are free to make, and district courts are free to accept. *Ibid.* ("Several district courts have in fact rejected the Guidelines range produced by U.S.S.G. § 2G2.2 in cases involving child pornography because those courts concluded that § 2G2.2 is based solely on legislative enactments designed to increase the length of sentences rather than being based on empirical data." (collecting cases)). But "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *Ibid.* (citing *United States v. Janosko*, 355 F. App'x 892, 895 (6th Cir. 2009); *United States v. Mikowski*, 332 F. App'x 250, 255–56 (6th Cir. 2009)); *see also United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012) ("reaffirming the principle that a district court is entitled to rely on the § 2G2.2 enhancements" but is not required to do so). Pendygraft's sentence is therefore not substantively unreasonable on this basis.

B.      Pendygraft's Criminal History

Pendygraft was convicted in 2001 for possession of child pornography. He was later convicted twice for failing to abide by the terms of his release, first for creating a Facebook account and then for failing to change his address in the sex offender registry. Pendygraft also had been convicted of possession of a firearm while a felon. Because of these convictions, the district court assigned Pendygraft ten criminal history points, placing him in Criminal History Category V.

Again, Pendygraft argues not that the district court erred in assigning him Criminal History Category V, but that this category overstates the severity of his past crimes and that the district court ought to have varied downward to account for that overstatement. Specifically, Pendygraft argues that he has not been convicted of any violent acts or sexual contact with children.

True, Pendygraft has no conviction for violent acts or sexual contact with children, but he does have a prior conviction for possession of child pornography and repeated convictions for failing to abide by the conditions of his release for that conviction. Such prior convictions for "sex-related offenses" create a "public-safety concern" and are legitimately considered by district courts when sentencing a defendant after a conviction for receipt of child pornography. *United States v. Frazier*, 547 F. App'x 729, 737 (6th Cir. 2013). Given the deference owed to district courts applying a within-Guidelines sentence, we cannot say that Pendygraft's sentence is substantively unreasonable on this basis.

C.      Unwarranted Sentencing Disparities

Pendygraft next argues that his sentence is substantively unreasonable because "most defendants convicted of possessing child pornography are sentenced well-below the Guidelines range."

"Under 18 U.S.C. § 3553(a)(6), a sentencing court is instructed to consider the need to avoid unwanted sentencing disparities among defendants with similar records." *Frazier*, 547 F. App'x at 737. "However, it is a national disparity, not a disparity between particular defendants that must be avoided." *Ibid.* (citing *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008)). "[T]he Guidelines themselves represent the best indication of national sentencing practices." *Ibid.* (alteration in original) (quoting *Houston*, 529 F.3d at 752). "Where the court properly calculated the Guidelines range, the court has necessarily taken steps to avoid a national disparity." *Ibid.*; *see*

*also United States v. Volkman*, 797 F.3d 377, 400 (6th Cir. 2015) ("When a sentence is within-Guidelines, § 3553(a)(6) is an improper vehicle for challenging that sentence.").

Because Pendygraft's sentence is within-Guidelines, it is not substantively unreasonable for failing to avoid sentencing disparities.

D.      The Butner Study

Pendygraft also argues that the district court improperly relied on the "Butner study," which purportedly found that individuals who possess child pornography are more likely to engage in physical abuse of children.

As an initial matter, Pendygraft's argument on this point sounds in procedural reasonableness, not substantive reasonableness; the latter is concerned with the length of the sentence, while the former is concerned with the district court's method of arriving at that length. *See, e.g.*, *United States v. Brissett*, 375 F. App'x 473, 476 (6th Cir. 2010) (distinguishing between challenges to the factors considered during sentencing and challenges to the length of a sentence in light of those factors). Regardless, Pendygraft preserved this argument, and we will address it on the merits.

A district court errs when it "selects[s] a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). Such erroneous sentencing occurs when the "sentencing judge relies upon 'erroneous information'" and "the information in question appears to have been 'an important factor in determining [the] sentence.'" *United States v. Wilson*, 614 F.3d 219, 224 n.3 (6th Cir. 2010) (alteration in original) (quoting *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005) and *United States v. Gonzalez-Castillo*, 562 F.3d 80, 81 (1st Cir. 2009)).

The district court did not err by relying on the Butner study for at least two reasons. First, "[f]ederal courts have taken different positions on the question of whether possession of child

pornography positively correlates with commission of hands-on sex offenses, and the debate remains very much a live one." *Cunningham*, 669 F.3d at 731 (citations omitted). "Until scientific evidence firmly discredits a purported causal link between the two kinds of offenses," this court continues to allow district courts to take either "position on the question so long as the [district] court appropriately explains its conclusion." *Ibid.* (citation omitted). Pendygraft has offered no scientific evidence that firmly discredits a link between possessors of child pornography and future abusers of children.[2] Therefore, the district court was permitted to accept the findings of the Butner study, provided the court properly explained its reasons for doing so.

Here, however, such explanation was not necessary because, in fact, the district court did not rely on the Butner study to find that Pendygraft had engaged, or was likely to engage, in sexual contact with children. The district court referenced the Butner study only as part of a broader discussion of Pendygraft's argument that his lack of hands-on offenses warranted a downward variance. The district court's rejection of that argument took two steps. First, the district court noted that studies such as the Butner study would lead the court to conclude that "we just don't know" whether Pendygraft had committed hands-on violations, as the violations often go unreported. Second, the district court rejected the proposition that a lack of hands-on offenses would warrant a downward variance at all, because "the Guidelines are not intended to punish [Pendygraft] for molesting children" and because of the severity of the harms suffered by the victims of Pendygraft's crime. That is, the district court made clear that its sentencing was relying not on the possibility of Pendygraft's having committed a hands-on violation but on his possession

---

[2] The only evidence offered by Pendygraft is a Ninth Circuit case criticizing the government for relying on the Butner study in support of the claim that "the majority of [child pornography] offenders are indeed contact sexual offenders." *United States v. Apodaca*, 641 F.3d 1077, 1087 (9th Cir. 2011) (alteration in original) (citation omitted). Here, however, the district court never asserted that a majority of child pornography offenders are sexual contact offenders, but instead only claimed that "the information we have would indicate that there is much, much more activity in terms of hands-on offenders than individuals acknowledge initially."

of child pornography. Therefore, the district court could not have erred in relying on the Butner study to find that Pendygraft had engaged in earlier hands-on offenses.

E.      Cumulative Reasonableness

Finally, Pendygraft argues that the prior considerations, taken in conjunction and considering Pendygraft's poor mental condition, show that his sentence was substantively unreasonable.  We find, having reviewed the totality of the circumstances in light of the presumption that a within-Guidelines sentence is substantively reasonable, and bearing in mind that "[c]hild pornography is, without qualification, a serious crime," *United States v. Robinson*, 669 F.3d 767, 776 (6th Cir. 2012), that the district court did not abuse its discretion in sentencing Pendygraft at the bottom of his Guidelines range.  Accordingly, we **AFFIRM**.