NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0111n.06

Case No. 19-5273

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 20, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| GARRY SEAN RAMONE DRAKE, JR., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |

BEFORE: GILMAN, McKEAGUE, and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant Garry Drake appeals the district court's above-Guidelines sentence as substantively unreasonable. For the reasons set forth below, we find that the district court's sentence was reasonable and **AFFIRM**.

Mr. Drake pled guilty to distribution of fentanyl resulting in an overdose death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Specifically, he admitted that he sold a mixture containing fentanyl to Phillip Jennings, who then sold some of the mixture to M.R. When M.R. ingested the fentanyl, it caused him to fatally overdose.

At Mr. Drake's sentencing hearing, the government recommended a sentence of 240 months—the statutory minimum and recommended Sentencing-Guidelines term—and the defense agreed. But the district court rejected the recommendation and varied upwards, instead sentencing Mr. Drake to 300 months. The court explained that it varied upwards because it

"d[id]n't believe . . . that 240 months would be a sufficient sentence. It would unduly diminish the seriousness of the offense and perhaps would not provide sufficient general deterrence for others engaged in this type of activity." The court explained that "when a person's child dies" it doesn't "matter if the death is at the end of a gun versus the end of a needle[.] It's the same thing." Although drug-trafficking offenses may be non-violent, the district court reasoned, they can have serious, deadly consequences, and Mr. Drake's sentence needed to reflect those serious consequences. Therefore, when the court considered "all of the [§ 3553(a) sentencing] factors, the need to protect the public, the need to provide both specific, as well as general deterrence, the need for the sentence to reflect the seriousness of the offense, and provide a just punishment" it concluded that 300 months was the appropriate sentence. *See* 18 U.S.C. § 3553(a). The court recognized that Mr. Drake had no criminal history and that he was remorseful, and said, "I certainly do take that into account, quite frankly, in not imposing a higher term of incarceration."

We review Mr. Drake's "above-Guidelines sentence using a 'deferential abuse-of-discretion standard.'" *United States v. Nixon*, 664 F.3d 624, 625–26 (6th Cir. 2011) (quoting *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)). Although above-Guidelines sentences are not entitled to a presumption of reasonableness, we also don't presume they are unreasonable. *United States v. Gall*, 552 U.S. 38, 47 (2007). It is Mr. Drake's burden to show that his sentence is substantively unreasonable. *See United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011) (citing *United States v. Houston*, 529 F.3d 743, 756 (6th Cir. 2008)).

On appeal, Mr. Drake argues that the district court's sentence was substantively unreasonable for three specific reasons: (1) the variance was unjustified under the totality of the circumstances, particularly given Mr. Drake's lack of criminal history; (2) the variance was unjustified because the court considered M.R.'s death in varying upward from the Guidelines, even

though that fact was already reflected in the Guidelines term; and (3) the sentence was unreasonable because it created an unwarranted sentencing disparity between Mr. Drake and Mr. Jennings, who both sold the fentanyl that killed M.R. None of Mr. Drake's arguments can carry his burden.

First, Mr. Drake argues that the variance imposed by the district court was not justified by the totality of the circumstances, especially considering his clean criminal record. But the district court considered Mr. Drake's lack of criminal history. And Mr. Drake doesn't contend that the district court failed to consider any of the other § 3553(a) factors. Moreover, the district court emphasized that Mr. Drake claimed not to know that the substance he sold the decedent was fentanyl rather than heroin; that the court had heard that same claim in numerous cases; that dealers like the defendant "are taking a risk of selling a drug [*i.e.*, fentanyl] for $40 that's killing people"; and that the "cost" of taking that risk "needs to be a very expensive cost of doing business." All of these considerations were important under § 3553(a), and none of them were already reflected in the Guidelines range. So his argument about the totality of the circumstances "boils down to an assertion that the district court should have balanced the § 3553(a) factors differently, [which] is 'simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence.'" *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

Next, Mr. Drake argues that the district court couldn't justify its variance from the Guidelines by relying on the fact that his drug sale resulted in a death because the Guidelines "already accounted for the overdose death." But "[t]his court has consistently rejected [this] general argument: that a sentence is substantively unreasonable whenever a district court considers

conduct in imposing a variance that was already used to calculate the Guidelines range." *United States v. Heard*, 749 F. App'x 367, 372 (6th Cir. 2018) (collecting cases); *see also id.* at 381 ("Double-counting is not, in and of itself, a problem.") (Moore, J., dissenting). So, Mr. Drake's argument that the variance was unreasonable simply because the district court double-counted must fail. There is no per se rule against it.

And even if there are specific cases where double-counting in this way *is* impermissible, s*ee id.* at 381 (Moore, J., dissenting), it would be Mr. Drake's burden to prove that this is one of those cases, s*ee Woodard*, 638 F.3d at 510 (citing *Houston*, 529 F.3d at 756). But Mr. Drake doesn't articulate any reason why double-counting in his particular case was unjustified. He simply alerts us to the fact that the district court double-counted and argues that this itself makes the variance unreasonable. This is not enough to carry his burden.

Last, Mr. Drake argues that his sentence is substantively unreasonable because the district court created an unwarranted sentencing disparity between him and Mr. Jennings, who directly sold the heroin-fentanyl mixture to M.R. After all, § 3553(a)(6) says that district courts should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Mr. Drake questions how his conduct and Mr. Jennings's conduct could be any more similar. And how could Mr. Jennings have a cleaner record than Mr. Drake, who has no criminal history? Yet their sentences differ by 10 years.

Although this argument has facial appeal, it cannot succeed. This court has consistently held that § 3553(a)(6) is concerned with national disparities and not "disparities between one individual's sentence and another individual's sentence," even when "the two are co-defendants." *United States v. Bacon*, 617 F.3d 452, 460 (6th Cir. 2010) (quoting *United States v. Simmons*,

501 F.3d 620, 623 (6th Cir. 2007)). This is because there are many valid reasons to sentence even co-defendants differently. *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009).

The district court did not explain why it sentenced Mr. Jennings to 180 months and Mr. Drake to 300 months. But it didn't have to, since Mr. Drake didn't raise this argument at his sentencing hearing. *See United States v. Sierra-Villegas*, 774 F.3d 1093, 1103 (6th Cir. 2014) ("[T]he district court may consider the defendant's sentence in comparison with that of co-defendants at sentencing, but need not do so; it is a matter of discretion."); *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (holding that when the defense raises an argument about disparity between the sentences of co-conspirators, the district court must consider the argument and explain its basis for rejecting it). In fact, Mr. Drake went one step beyond neglecting to challenge the sentencing disparity: he himself recommended a sentence of 240 months, which is itself 5 years longer than Jennings's 180-month sentence. Thus, it is especially reasonable that the district court didn't explain the difference between Mr. Drake's and Mr. Jennings's sentences.

Because Mr. Drake has failed to show that his sentence was substantively unreasonable, we **AFFIRM**.

**RONALD LEE GILMAN, Circuit Judge, dissenting.** The majority concludes that Garry Drake's above-Guidelines 300-month sentence is substantively reasonable. I respectfully disagree. The district court failed to adequately explain why Drake, in particular, should receive a sentence 60 months above the 240-month Guidelines term. It also engaged in double counting without a compelling justification.

## I. BACKGROUND

Drake pleaded guilty to knowingly and intentionally distributing fentanyl, in violation of 21 U.S.C. § 841(a)(1), which resulted in a death, an aggravating factor under 21 U.S.C. § 841 (b)(1)(C). Under United States Sentencing Guideline (U.S.S.G.) § 2D1.1(a)(2), the base offense level for violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) is 38. Drake then received a reduction of 3 levels for accepting responsibility for his crime. The resulting Guidelines range for Drake was 168 months to 210 months of imprisonment based on his net offense level of 35 and his lack of a criminal history. But because Drake's drug crime resulted in a death, the statutory minimum term of imprisonment of 240 months applied under 21 U.S.C. § 841(b)(1)(C). This statutory minimum thus became the Guidelines term for Drake.

The district court correctly calculated Drake's 240-month Guidelines term of imprisonment at the sentencing hearing. It explained that "in other cases involving deaths of individuals from this specific substance, fentanyl, [it has] gone above the guideline range and above mandatory minimums based upon a variety of factors." Despite noting that "every case is individual," the court simply listed the factors that it was required to consider under 18 U.S.C. § 3553(a).

The court first turned to the seriousness of drug trafficking in general, suggesting that "perhaps we should question politicians and others that say drug trafficking offenses because they're not violent they're just not as serious as others" and that "when a person's child dies, does

it matter if the death is at the end of a gun versus the end of a needle? It's the same thing." It further asserted that "we diminish perhaps the seriousness of drug trafficking offenses when we say they're not violent felonies because they do certainly have serious consequences, and oftentimes they do result in death." The court finally stated that a person would have to be "living under a rock" to not understand that they were dealing "something more dangerous" than heroin, in reference to Drake's claim that he had mistakenly believed he had sold heroin to M.R.

Turning to Drake's "particular case," the court again recited the factors that it was required to consider under 18 U.S.C. § 3553(a): the defendant's remorse, his lack of criminal history, the need to protect the public, the need to provide both specific and general deterrence, the need for the sentence to reflect the seriousness of the offense, and the need to provide just punishment. It then summarily concluded, based on all of these factors, to vary upwards beyond the Guidelines term by 60 months.

## II. ANALYSIS

### A. Standard of review

As the majority explains, this court reviews "above-Guidelines sentence[s] using a 'deferential abuse-of-discretion standard.'" *United States v. Nixon*, 664 F.3d 624, 625–26 (6th Cir. 2011) (quoting *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)). Under substantive-reasonableness review, we consider whether "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

Sentences that fall within the Guidelines range may be considered presumptively reasonable, but sentences that vary above or below the Guidelines "are afforded no such presumption." *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). Thus, when the district court deviates from the Guidelines, the appellate court "may consider the extent of the

deviation." *Gall v. United States*, 552 U.S. 38, 51 (2007). "[A] major [variance] should be supported by a more significant justification than a minor one," *id.* at 50, and "[t]he farther the judge's sentence [varies] from the guidelines sentence . . . [,] the more compelling the justification based on factors in section 3553(a) must be," *United States v. Aleo*, 681 F.3d 290, 299 (6th Cir. 2012) (citation and internal quotation marks omitted).

## B. Substantive reasonableness

In applying the substantive-reasonableness standard to case before us, I conclude that the district court did not offer a sufficiently compelling reason why Drake deserved a 60-month upward variance for his crime. This court has explained that "[w]hen a district court varies outside the guideline range, then, we expect the court to explain what distinguishes that defendant's case from a typical one." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019), *petition for cert. filed*, No. 19-611 (U.S. Nov. 8, 2019). A district court's concentration on the individualized facts of each case is indeed why we afford sentencing discretion on appellate review. *See id.* ("[T]his circuit gives sentencing courts broad discretion to fashion individualized, fact-driven sentences without interference from appellate courts.")

The district court here, however, did nothing to explain why Drake's case, in particular, warranted an above-Guidelines sentence. It simply noted that it often went above the Guidelines range in sentencing individuals who trafficked in fentanyl. The implied justification for the court's stated policy is that fentanyl is more dangerous than other drugs. But the law already reflects this risk because 21 U.S.C. § 841(b)(1)(C) imposes a mandatory minimum sentence of 240 months on drug traffickers who cause overdose deaths.

Moreover, the district court did not delve into Drake's specific state of mind or intent in selling fentanyl to M.R. An individualized inquiry would have been particularly important here,

where Drake claimed that he had mistakenly believed that he had been trafficking in heroin. Nor did the court mention that Drake had pleaded guilty to knowingly and intentionally distributing less than four grams of fentanyl, a minimum quantity for calculating base offense levels. *See* U.S.S.G. § 2D1.1(c).

The district court's failure to provide an individualized justification is also troublesome because the court greatly exceeded the 240-month sentence recommended by the Assistant United States Attorney charged with Drake's case. As the Supreme Court has explained, "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty." *Berger v. United States*, 295 U.S. 78, 88 (1935). The overriding interest of the United States Attorney is therefore "that justice shall be done." *Id.* In light of the Assistant United States Attorney's unique role as the conscience of the people, the district court below should have offered a more thorough explanation for its upward variance well beyond the government's 240-month request.

Setting aside the district court's failure to concentrate on the facts of Drake's particular case, it also muddied the waters by opining on the failure of politicians to take into account the fatal consequences of drug trafficking in general. This justification for the court's variance is unpersuasive because the dire consequences of drug trafficking are directly accounted for in Drake's Guidelines term, as explained above. Drake would have been subject to a substantially lower sentence under the applicable Guidelines had he not violated 21 U.S.C. § 841(b)(1)(C), which punishes certain drug crimes resulting in death. Indeed, the mandatory 240-month minimum term of imprisonment would not have applied to his case at all if a death had not resulted.

This court, moreover, has rejected similar arguments that the Guidelines did not adequately capture the seriousness of a defendant's offense. In *Aleo*, for example, the district court had

determined that the Guidelines did not provide adequate punishment for a producer, possessor, and distributor of child pornography who had molested his granddaughter while committing the offense. But because the "guidelines took into account the very factors that the sentencing judge said that they did not," this court determined that the district court judge's concern about the severity of Aleo's offense failed to provide a compelling justification for the variance. 681 F.3d at 301. The Guidelines in the present case, like the Guidelines at issue in *Aleo*, take into account the very factor that the district court said was not addressed.

This brings me to Drake's contention that "double counting" the fact that Drake's actions resulted in death is unwarranted. The government argues that double counting is permitted in this circuit, citing *United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011), where this court held that the fact "[t]hat a circumstance was addressed in the Guidelines . . . does not prevent the district court from considering it under section 3553(a)." *Nixon*'s holding further explained, however, that such double counting is permissible "so long as the court explains why the circumstance warrants additional weight *with regard to that particular defendant's sentence.*" *Id.* (emphasis added). As discussed above, the district court pointed to nothing about Drake's particular circumstances that warranted double counting the death that had already dictated Drake's Guidelines range. I therefore conclude, contrary to the majority, that Drake has met his burden of explaining why double counting is impermissible where, as his counsel points out, "the fact that death resulted is the sole reason why Mr. Drake received an offense level of 35 for what was a $40 drug deal."

Finally, even if we should reject sentencing comparisons between Drake and his codefendant under 18 U.S.C. § 3553(a)(6), this does not mean that we should shirk our duty to consider "unwarranted disparities among similarly situated defendants nationwide." *See Boucher*, 937 F.3d at 708; *see also United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008) ("[T]he

Guidelines themselves represent the best indication of national sentencing practices."). If the district court below continues to add 60 months to the sentences of defendants like Drake without a clearer justification, such disparities will inevitably continue.

For all of the reasons set forth above, I respectfully dissent.