**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0350n.06

Case No. 19-3960

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jun 12, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| LARRY WILLIAMS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MOORE, SUTTON, and GRIFFIN, Circuit Judges.

SUTTON, Circuit Judge. Larry Williams filed a motion to reduce his sentence under the First Step Act. After a hearing, the district court denied his request. Because the court did not abuse its discretion, we affirm.

In June 2006, police executed a search warrant of Williams's home. They uncovered approximately 88 grams of crack cocaine, about 24 grams of heroin, and drug-packaging materials. A search of his storage unit yielded three rifles, a pistol, and 27 rounds of ammunition. All of this led to a three-count indictment for possessing cocaine with intent to distribute, possessing heroin with intent to distribute, and possessing firearms as a convicted felon. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 922(g). Williams pleaded guilty.

Prior convictions for armed robbery, burglary, drug trafficking, drug possession, and manslaughter led to a criminal history category of six. Based on that score and the quantities of drugs involved in his crime, his guidelines range stood at 151 to 188 months. Noting Williams's "tragic" upbringing, the court imposed a sentence at the bottom of that range: 151 months. R. 36 at 28–29. Williams did not appeal.

Several years later, the Sentencing Commission reduced the base offense levels for certain drug crimes. *See* U.S.S.G. amend. 782 (eff. Nov. 1, 2014). Williams filed a motion to reduce his sentence. *See* 18 U.S.C. § 3582(c)(2). After acknowledging Williams's eligibility for a reduction, the court declined the request. It explained that the existing sentence "appropriately reflect[ed] the seriousness of the offense," and was also "necessary to protect the public and afford adequate deterrence" given Williams's "extensive criminal history and his propensity to engage in violent or drug-related criminal conduct." R. 42 at 5. Williams did not appeal.

In December 2018, Congress passed the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194. The Act made retroactive certain sentencing changes from an earlier statute, the Fair Sentencing Act. *Id.* § 404(a), (b). The Fair Sentencing Act lowered mandatory minimums for crack cocaine offenses and directed the Sentencing Commission to make similar changes to the guidelines. Fair Sentencing Act of 2010, § 2(a), Pub. L. No. 111-220, 124 Stat. 2372. The First Step Act allowed those sentenced under the old regime to file a motion to reduce their sentence. If they do, then the court "may . . . impose a reduced sentence as if" the relevant provisions of the Fair Sentencing Act "were in effect at the time the covered offense was committed." First Step Act, § 404(b). But none of this "shall be construed to require a court to reduce any sentence." *Id.* § 404(c).

Williams filed a First Step Act motion. Because one of his convictions involved crack cocaine, the Act reduces his sentencing range. With all subsequent reductions factored in, his new guidelines range would be 77 to 96 months. Williams asked the district court for a reduction to 77 months. The government did not oppose his request.

The court held a hearing. After listening to each side, it said it was not inclined to grant a reduction. The court explained that Williams's heroin distribution and the four guns and ammunition found on him meant that this is not merely "a crack cocaine case," and his extensive criminal history suggested a heightened need to protect the public. R. 59 at 11–15. His attorney pushed back, detailing Williams's efforts at rehabilitation and reminding the court that it could agree to a lesser reduction than the one Williams offered. The court said it would take more time to consider the issues and would provide a written decision. That order explained that the court was "mindful of its discretion" and had considered Williams's efforts to "better[] himself through educational and vocational classes within prison" but still declined to reduce his sentence. R. 60 at 5.

Williams appealed. We have jurisdiction under 28 U.S.C. § 1291. *See United States v. Smithers*, __ F.3d __, 2020 WL 2702500, at *4 (6th Cir. 2020). The government does not argue that we lack authority to review the decision for abuse of discretion.

Williams is eligible for a reduction under the First Step Act. But that is not the same as entitlement. The statute says that the court "may . . . impose a reduced sentence," meaning that the ultimate decision is left to the district court's "sound discretion." First Step Act of 2018, § 404(b), (c); *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019) (per curiam). The parties assume that we may review for abuse of discretion and assume our review "resembles the

reasonableness review that would apply to a sentence on direct appeal." *Smithers*, 2020 WL 2702500, at *4.

The court did not abuse its discretion. It made its decision after careful consideration of the sentencing factors in 18 U.S.C. § 3553(a). It considered the nature and circumstances of the offense: Williams committed his offenses while out on bond for aggravated murder, and they involved substantial quantities of heroin (not just cocaine) and four guns. 18 U.S.C. § 3553(a)(1). It considered the history and characteristics of the defendant: The court reviewed Williams's extensive criminal record, revealing a "drug trafficker who has been willing to use violence and use a firearm" and who continued to commit crimes despite jail time. R. 59 at 19–20; 18 U.S.C. § 3553(a)(1). It considered the need for the sentence to deter crime and protect the public: Shorter sentences had not been a deterrent before, and Williams's violent record meant he was not a "good risk to [be] put back in the community." R. 59 at 14–15; 18 U.S.C. § 3553(a)(2). It considered the range of sentencing options and the applicable guidelines range: The court repeatedly referenced its discretion to reduce Williams's sentence and the new reduced guidelines range. 18 U.S.C. § 3553(a)(3), (4). Counsel for Williams had plenty of opportunities to make his case, and the court responded to his arguments.

All told, the court's analysis "fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967–68 (2018). It also was consistent with our precedents. We have affirmed First Step Act denials involving defendants with equally serious offenses and criminal records. *See, e.g.*, *Smithers*, 2020 WL 2702500, at *4; *United States v. Robinson*, __ F. App'x __, 2020 WL 2611192, at *1–3 (6th Cir. 2020); *United States v. Rosado*, No. 19-5134, 2019 U.S. App. LEXIS 26513, at *2–3, *5 (6th Cir. Aug. 30, 2019).

Williams counters that the court "failed to account" for his "rehabilitative efforts" and "improperly . . . question[ed] the value of an inmate's rehabilitation generally." Appellant Br. 13. District courts, it is true, may consider the defendant's post-sentencing rehabilitation when taking stock of these motions. *United States v. Allen*, 956 F.3d 355, 357–58 (6th Cir. 2020). But that is what the court did. It acknowledged that Williams "may be rehabilitating himself while he's in custody," encouraged him to "[k]eep doing what you're doing," and referenced the need for a sentence to "improve the offender's conduct and condition." R. 59 at 16, 19. It said the same thing in its written decision, noting it had "taken into account Williams' assertions that he has bettered himself through educational and vocational classes within prison." R. 60 at 5. That suffices as a procedural matter. *See, e.g.*, *United States v. Richardson*, __ F.3d __, 2020 WL 2781306, at *3 (6th Cir. 2020); *United States v. Woods*, 949 F.3d 934, 938 (6th Cir. 2020).

Williams adds that the court discounted the value of rehabilitation when it said "it's easy to [rehabilitate] when you're in custody." R. 59 at 19. But a fairer interpretation of the statement in context is that the court thought longer incarceration would better serve the goal of "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). That explains why the court encouraged Williams to continue his rehabilitative efforts.

Williams claims that the court "improperly relied on the sentencing recommendation of the probation officer from Mr. Williams's original sentencing hearing twelve years earlier." Appellant Br. 13. But the context of the court's statement reveals otherwise. "And unfortunately, and sadly," the court said, "when you look at that record, the probation department recommended at that time a high-end guideline sentence of 188 months, recognizing the modification of the guidelines that the parties have referenced and agreed to appl[y]. I'll keep that in mind." R. 59 at 14. It is just as

likely the court was "keep[ing] [] in mind" the "modification of the guidelines" rather than the original recommendation. *Id.* There's no indication at any rate that the court thought the original recommendation reflected Williams's current guidelines range. As shown, the court understood the updated range, and courts may rely on the entire record, including the original sentencing proceedings. *Chavez-Meza*, 138 S. Ct. at 1967; *see United States v. Boose*, No. 19-3455, 2019 U.S. App. LEXIS 35703, at *4–6 (6th Cir. Nov. 26, 2019).

Williams fears that the court "failed to appreciate its discretion to grant a sentence reduction," thinking it "had to accept the joint recommendation of the parties for a reduction to 77 months, or conversely give no reduction at all." Appellant Br. 13. If true, that would be a problem. But nothing in the record shows the court failed to appreciate such a basic point. Williams's counsel reminded the court of its discretion. And the court acknowledged that the "First Step Act now permits the Court to exercise the full range of its discretion" under the § 3553(a) factors and said it was "mindful of its discretion." R. 60 at 2, 5.

Williams also suggests that the court placed undue weight on his criminal record. But we must give "due deference" to the district court's balancing of the § 3553(a) factors, not our own balancing of those factors. *Gall v. United States*, 552 U.S. 38, 51 (2007). The court provided a "significant justification" for the sentence, conducting a thorough analysis of the sentencing factors and explaining how Williams's criminal history fit into them. *Id.* at 50. In direct sentencing appeals we have upheld similar sentences for similar reasons. *See, e.g.*, *United States v. Thomas*, 933 F.3d 605, 612–14 (6th Cir. 2019); *United States v. Woodard*, 638 F.3d 506, 510–11 (6th Cir. 2011); *United States v. McBee*, __ F. App'x __, 2020 WL 2204231, at *4 (6th Cir. 2020); *United States v. Jennings*, 407 F. App'x 20, 21–22 (6th Cir. 2011); *United States v. Benitez-Salinas*, 364 F. App'x 227, 228–29 (6th Cir. 2010). And in First Step Act appeals, we have affirmed courts that

declined to reduce sentences for similar reasons. *See, e.g.*, *Woods*, 949 F.3d at 938; *Robinson*, 2020 WL 2611192, at *3.

With respect to our colleague, *United States v. Smith* is not the Rosetta Stone of sentencing appeals and indeed Williams never raised the decision as supplemental authority. 959 F.3d 701, 2020 WL 2503261 (6th Cir. 2020). Yes, the court reversed a district court that declined to reduce an above-guidelines sentence under the First Step Act. *Id.* at *3. But that case has more differences than parallels to this one. The defendant was convicted of cocaine distribution alone, while Williams was convicted of cocaine distribution and heroin distribution and illegal possession of four guns. *Id.* at *1. Nor is there any indication that Smith had a history of violence. Contrast that with Williams, who has been convicted of many violent crimes, often committed immediately after shorter prison sentences, including a manslaughter conviction in the context of drug dealing. The district court discussed all of this and more during an extensive hearing with back-and-forth from Williams's attorney *and* in a separate written order. That, too, contrasts with *Smith*, where the court "briefly" discussed just two § 3553(a) factors at the hearing. *Id.* at *3. As already shown, we have upheld similar rejections of requests for First Step Act reductions, which Congress reminds us are not "require[d]." First Step Act, § 404(c). Those many affirmances are more pertinent than this one reversal.

As for the claim that this trial judge is out of step with his colleagues on the Northern District of Ohio, that is not the measure we use, whether in assessing above-guidelines or below-guidelines sentences. The relevant benchmark is national disparities in view of the national guidelines and national statutes, not local disparities. *See United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008); *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). More to the point, each case must be considered on its own in the context of that individual's criminal history

and that individual's prospects for a safe re-entry into free society. That is an exercise done most effectively by an on-the-scene judge, not a distant appellate panel. In reviewing those decisions, we can no more place a thumb on the scale in favor of reversal of the trial judges most likely to issue above-guideline sentences than the judges most likely to issue below-guidelines sentences.

We affirm.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Judge Henry Friendly once reminded us that "the 'abuse of discretion' standard does not give nearly so complete an immunity bath to the trial court's rulings as counsel for appellees would have reviewing courts believe." *Indiscretion About Discretion*, 31 EMORY L.J. 747, 784 (1982). In this case, the majority draws the water anyways, and keeps Larry Williams in prison for twice as long as Congress and the Sentencing Guidelines say he should be. Because the district court's denial of Williams's First Step Act motion lacked a "sufficiently compelling justification for maintaining a sentence that is now twice the guideline range set by Congress," *United States v. Marty Smith*, No. 19-5281, --- F.3d ---, ---, 2020 WL 2503261, at *3 (6th Cir. May 15, 2020) (designated for publication), I dissent.

\*\*\*

Discretion means different things in different contexts. As the Third Circuit has observed, "The mere statement that a decision lies within the discretion of the trial court does little to shed light on its reviewability." *United States v. Criden*, 648 F.2d 814, 817 (3d Cir. 1981). "The justifications for committing decisions to the discretion of the court are not uniform, and may vary with the specific type of decisions." *Id.* This coheres with our understanding of appellate review of sentencing decisions. In this area, the general rule is that the sentencing court possesses "broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005) (Stevens, J.). But as precedent teaches, the "justifications" for sentencing-court discretion "may vary" within different contexts of sentencing itself, *Criden*, 648 F.2d at 817, and the degree of discretion enjoyed by the court may vary correspondingly. For example, when sentencing outside the guidelines range, the district court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."

9

*Gall v. United States*, 552 U.S. 38, 50 (2007). Indeed, if a sentence is outside the advisory range, the district court is required by statute to state "the specific reason for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]" 18 U.S.C. § 3553(c)(2). "The greater the variance, the more compelling the justification must be." *United States v. Perez-Rodriguez*, No. 18-4203, --- F.3d ---, ---, 2020 WL 2745316, at *2 (6th Cir. May 27, 2020) (designated for publication). And a district court has less discretion to vary when the case before it is in the mine-run. *See Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007). All of these represent contexts within sentencing in which some limits exist on the district court's discretion. As a general matter, the degree of discretion a district court possesses in its sentencing determinations will depend, in part, on how far from the beaten path it strays.

This principle should inform our review of how a district court has exercised its discretion in disposing of a First Step Act sentence-reduction motion. As a starting point, the sliding scale of discretion takes place, in the context of the First Step Act, between two parameters. The first is the Act's statement that a district court shall not be "require[d]" to reduce a sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. at 5222. The second is our statement that with respect to the First Step Act's statutory grant of discretion, "district courts may, necessarily, act in a manner inconsistent with that discretion," and thereby "abuse this statutory grant of discretion." *United States v. Foreman*, 958 F.3d 506, 514 (6th Cir. 2020).

In this particular case, three additional factors are relevant in appraising how much discretion the district court has, and what constitutes an abuse of it. For one, "[t]he First Step Act itself indicates that Congress contemplated close review of resentencing motions." *United States v. Boulding*, Nos. 19-1590, 19-1706, --- F.3d ---, ---, 2020 WL 2832110, at *8 (6th Cir. June 1, 2020) (designated for publication). As we explained in *Boulding*, in retroactively reducing

10

penalties and recommended sentences for certain offenders, "Congress intended district courts to conduct[] complete review of the resentencing motion on the merits." *Id.* Second, the First Step Act cut Williams's mandatory-minimum sentence in half (previously ten years, now five years), and did nearly the same with his sentencing guidelines range (previously 151 to 188 months, now 77 to 96 months). Third, both parties—Williams and the federal government—requested a sentence reduction in this case, and at the bottom of the amended guidelines range, no less. Although these three factors did not require the district court to grant Williams's sentence-reduction motion, taken together they certainly limited the district court's discretion to deny it entirely. *See Smith*, 2020 WL 2503261, at *3.

With these limitations in mind, the district court's denial of Williams's motion constituted a plain abuse of discretion. First, the district court cannot be said to have conducted a "complete review of the resentencing motion on the merits." *Boulding*, 2020 WL 2832110, at *8. A one-line acknowledgment in the written order that the district court had "taken into account Williams' assertions that he has bettered himself through educational and vocational classes within prison," R. 60 (Order at 5) (Page ID #307), did not rectify its earlier refusal to credit any efforts toward rehabilitation made by Williams. At the hearing, the district court generally discounted the value of rehabilitative efforts, stating:

> Yes. He may be rehabilitating himself while he's in custody. Sure. It's easy to do that when you're in custody. But when you're back in the community, or when you've proven over time when you're released from custody and you return to your old ways very quickly, then one has to ask, is this person a good risk?

R. 59 (Resent'g Hr. Tr. at 19) (Page ID #292). The majority does not explain how this passage shows that the district court "thought longer incarceration would better serve the goal" of rehabilitation. Maj. Op. at 5. Instead, these statements, and others throughout the hearing, reflected the district court's nearly exclusive focus on the seriousness of Williams's other

convictions, to the exclusion of the other 18 U.S.C. § 3553(a) factors that the court was required to consider. *See Boulding*, 2020 WL 2832110, at \*1.

Second, the district court did not offer a sufficiently compelling rationale for why a sentence twice as long as that recommended by the amended sentencing guidelines—and more than double the new mandatory minimum—was appropriate. In light of its concerns with the heroin and firearm elements of Williams's case, the district court was entitled to reject the parties' request for a reduced sentence of 77 months. But "[t]he district court's explanation for denying [Williams]'s motion for a reduction does not adequately explain why [Williams] should not receive at least *some* sentence reduction." *Smith*, 2020 WL 2503261, at \*3 (emphasis added). This case is much like *Smith*, a recent, binding decision in which we vacated a district court's order denying a First Step Act sentence-reduction motion. In *Smith*, the defendant's mandatory minimum was similarly cut in half by the First Step Act, and his resulting sentencing guidelines range was reduced from 168–210 months to 77–96 months, *id.* at \*1–2, the same resulting range as Williams's. In that case, we recounted how, in denying the motion, the district court "briefly discussed the nature and circumstances of Smith's offense and the need to protect the public—two of the § 3553(a) factors." *Id.* at \*3. "The [district] court pointed to the scale and harm of [the defendant]'s criminal conduct and determined that [he] has a high risk for recidivism based on statistical information of people who, like [the defendant], have a significant criminal history." *Id.*

This reasoning was inadequate, we held, because "these considerations are accounted for within the guidelines calculation and therefore do not provide sufficient justification for maintaining a sentence that is twice the maximum of the guideline range set by Congress." *Id.* This holding applies with equal force here. Indeed, counsel for Williams explained to the district court that

12

> [i]n calculating [Williams's] current guidelines, we took both drugs [crack-cocaine and heroin] into account . . . . So that is part of the guidelines calculation.
> And the guns are part of the sentencing guidelines calculation as well.
> . . .
> The heroin and the guns are part of the case as well, but they are taken into account in fashioning the guideline range that we had.

R. 59 (Resent'g Hr. Tr. at 26) (Page ID #299). The district court looked past this assertion, reasoning that "if it involves a gun or firearms or heroin or some other type of drug, even if it's incorporated in the guidelines, it's going to have a bearing on whether any kind of reduction is in order." *Id.* at 27 (Page ID #300). This reasoning may suffice for declining to grant a reduction of the degree requested by Williams, but as *Smith* explains, it is insufficient for keeping the sentence at twice the guideline range set by Congress. *See Smith*, 2020 WL 2503261, at *2 ("The fact that Congress was the actor that lowered the mandatory minimum here and thereby lowered the relevant guideline range puts that amended guideline on 'stronger ground.'") (quoting *United States v. Bistline*, 665 F.3d 758, 763 (6th Cir. 2012)).[1] At the very least, this reasoning does not explain why Williams's sentence should be any longer than 120 months, which was the sentence imposed for the unaltered heroin and firearm counts. In denying Williams's First Step Act motion, the district court never explained how—now that the crack-cocaine penalty has been dramatically reduced—any term of imprisonment longer than 120 months is "not greater than necessary." 18 U.S.C. § 3553(a).

Third, the district court inexplicably dismissed the significance of the parties jointly requesting a sentencing reduction—and lashed out at them for filing a motion at all. In this case,

---

[1]In fact, vacatur may be even more appropriate in this case than in *Smith*. In *Smith*, as here, the First Step Act lowered both the defendant's mandatory minimum and his guidelines range. But in *Smith*, the resulting mandatory minimum (120 months) was *higher* than the resulting guidelines range (77 to 96 months), meaning that the district court would not have been able to impose a new sentence in the modified guidelines range even if it had so desired. Here, by contrast, the new mandatory minimum corresponding to Williams's conviction amounts to 60 months, whereas the guidelines range is 77 to 96 months. This means that the district court here, unlike in *Smith*, was fully capable of imposing a reduced sentence within the congressionally specified guidelines range, but did not.

the government not only refrained from opposing Williams's motion to reduce his sentence under the First Step Act, but counsel for the government explicitly stated at the hearing that, like Williams, he was "asking the Court to impose a sentence of 77 months." R. 59 (Resent'g Hr. Tr. at 8) (Page ID #281). Counsel for the government also confirmed that the process of deciding whether or not to join in a defendant's request for sentence reduction under the First Step Act is not "just a rubber stamp," but required specific evaluation of each defendant's case. *Id.* at 24 (Page ID #297). It is true that district courts are not bound by joint sentencing recommendations. But in the context of a retroactively modified penalty structure, which lowered both Williams's mandatory minimum and his guideline range, it was the district court's failure to abide the recommendation of the prosecutor—not the prosecutor's conduct—that was "shock[ing]." R. 59 (Resent'g Hr'g Tr. at 11) (Page ID #284).[2]

This failure was compounded by the district court's undue criticism of the parties for filing the motion at issue here. The district court's insinuation that Williams needed a reason beyond the enactment of the First Step Act to file his motion was baseless, and in any event, counsel for Williams offered a perfectly cogent rationale for filing the motion. In response to the district court chastising defense counsel for "misl[eading]" Williams into thinking he would receive a sentence reduction, counsel responded: "This Court, in 2006, 13 years ago, was aware of all these facts. . . . and this Court imposed a sentence at the low end of the guidelines. That led us to think that asking for a sentence at the low end of his new guidelines was warranted." R. 59 (Resent'g Hr'g Tr. at

---

[2]This was not the first time in this case that the district court had chewed out the government for perceived leniency. At Williams's sentencing in 2007, the government explained that, in conversation with local prosecutors for Williams's other alleged crimes, he had been offered a fifteen-year sentence for all cases under which he was indictment. After stating that it did not wish to "second guess" these prosecutors' offer, the district court proceeded to do so, enumerating Williams's various alleged crimes and asking, "[T]hat warrants no more than 15 years?" R. 36 (Sent'g Hr'g Tr. at 19–20) (Page ID #174–75). In the district court's view, the plea agreement "present[ed] a woefully inadequate sentence." *Id.* at 27 (Page ID #182).

16–17) (Page ID #289–90). Suggestion by the district court that counsel for Williams had "overlook[ed] the facts" was simply unwarranted. *Id.* at 27 (Page ID #300).

Finally, as Williams demonstrates in his brief (and as the government does not dispute), this particular district judge's practice of denying First Step Act motions appears to be clearly out of step with the rest of the Northern District of Ohio. Indeed, this is the only judge in the district to deny an unopposed First Step Act motion—and this is the second time the judge has done so. Appellant Br. at 24. According to Williams, every single one of the thirty-three unopposed, sentence-reduction motions filed by the local Federal Defender's Office on behalf of eligible defendants and considered by other judges in the district has been granted. *Id.; cf. United States v. Flowers*, No. 1:04 CR 223, 2019 WL 3068204, at *2 (N.D. Ohio July 12, 2019) (denying a First Step Act motion that was opposed by the government). To be clear, this intradistrict disparity is not one that could render the district court's order in conflict with 18 U.S.C. § 3553(a)(6), which instructs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." That factor, we have held, "concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008) (emphasis added). Still, even if local disparities represent a "non-mandatory consideration," sentencing courts may "consider[] local disparities to be a relevant consideration." *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). This local disparity is troubling to say the least.

For all of these reasons, I dissent.

15